C. A. TENNESSEN, Trustee of the Estate of Gerald Ralph Picken, a bankrupt, Plaintiff,

v.

The FIRST NATIONAL BANK OF KENOSHA, a banking corporation, Defendant.

No. 6458.

United States District Court
E. D. Wisconsin.

Dec. 3, 1956.

V. J. Lucareli, Kenosha, Wis., for plaintiff.

Cavanagh, Mittelstaed, Sheldon, Heide & Hartley, Kenosha, Wis., for defendant.

GRUBB, District Judge.

This action is brought by the trustee of a voluntary bankrupt's estate to recover a preference under the Bankruptcy Act, Title 11, Chapter 6, § 96.

On or about October 28, 1953 the defendant took a note and chattel mortgage on a 1950 Ford automobile from the bankrupt in question. The defendant never filed its chattel mortgage according to Wisconsin Statutes, § 241.08 and § 241.10, to perfect its lien against other persons than the bankrupt-mortgagor himself. The said note and chattel mortgage secured a loan of $653. The bankrupt made only two payments on said note, in December 1953 and in January 1954, in the total amount of $67.92. On March 16, 1954 the said Ford automobile was repossessed by defendant, and on April 1, 1954 it was sold for the reasonable amount of $350 less $18.20, the expenses of the sale. The report of sale was filed on April 2, 1954. On April 7, 1954 the bankrupt was adjudicated a bankrupt. His assets at that time were $364.50, exclusive of the automobile in question; his total debts were $1,739.14.

At the time the loan in question was negotiated in October 1953, the bankrupt discussed his finances with a vice president of the defendant. The bankrupt's wife, a co-signer of the note, consulted this same bank officer in December 1953 when the bankrupt lost his job and could not make the coming loan payment. Payments were already past due at the time of this second meeting. The defendant's vice president was told at this time that the bankrupt could not afford the payments, nor could he pay his debts. The bank's vice president suggested that the bankrupt attempt at least to make

the interest payments on the loan as they became due. At the first meeting on October 28, 1953, at which the loan was negotiated, the bankrupt disclosed debts of about $1,200. No further discussion of debts was had·at the December 1953 meeting. The bankrupt continued to be unemployed until August 1954. After the October 28, 1953 meeting but before the repossession, defendant's vice president was informed that the bankrupt and his wife were receiving relief payments. Defendant's vice president testified that no credit check was made of this bankrupt.

Title 11, Chapter 6, § 96, sub. a, defines a preference as—

"* * * a transfer, * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Subsection b states further:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

■■ It is the decision of this court that the facts in this case clearly establish a preferential transfer on March 16, 1954, the date of the repossession by defendant of the automobile in question. The facts indicate that the defendant had reasonable cause to believe that the bankrupt was insolvent at the time of the transfer. C. A. Swanson & Sons Poultry Co. v. Wylie, 9 Cir., 1956, 237 F.2d 16, 19, gives the test for "reasonable cause" to believe that the bankrupt was insolvent:

"Actual knowledge of insolvency is not required. It is sufficient that a state of facts has been brought to the creditor's attention concerning the affairs and financial condition of the debtor that would lead a prudent businessman to conclude that the debtor is insolvent. The creditor is charged with the knowledge which a reasonably diligent inquiry would disclose."

■■ The transfer cannot be said to have occurred on the date the loan was consummated, and the note and mortgage executed, since the chattel mortgage was never filed according to the Wisconsin Statutes so as to secure a lien good against other persons than the mortgagor-bankrupt alone. The court is persuaded that the rule expressed in Johnson v. Burke Manor Building Corp., 7 Cir., 1931, 48 F.2d 1031, 1034 to the effect that—

"* * * where a lien is good as between the parties, but because of the lack of registration or possession not good against lien creditors, its registration, or in a proper case the taking of possession of the property before bankruptcy, will render it valid as against the trustee in bankruptcy, and will not be held to be the obtaining of a preference."— is superseded by subsection (7) of Title 11, Chapter 6, § 96, sub. a.

■ The defendant's position is that the automobile in question is not liable to be included in the bankrupt's estate for distribution to the creditors because it is exempt under Wisconsin Statutes, § 272.18(6). It is the decision of this court that the determination of exemption claims is properly made by the referee in bankruptcy, subject to review by this court. See: In re Gordon's Estate, D.C.1930, 44 F.2d 810; In re Dobbs, D.C. 1909, 175 F. 319.

■ The bankrupt in the instant case did not claim the auto in question as exempt in the schedules of his petition. The question whether the defendant may now assert the bankrupt's exemptions

**.514**

ought either to be decided by the referee in the proceeding before him, or by this court in the event of appeal by the defendant from the referee's determination.

Counsel for the trustee is directed to draw findings of fact and conclusions of law in conformity with this decision and to submit same to counsel for defendant for approval as to form only.