**N. P. DEAN, as Trustee of the Bankrupt Estate of Fred Zuckerman, Plaintiff,**

v.

**PLANTERS NATIONAL BANK OF HUGHES, Arkansas, a corporation, Defendant.**

**Civ. No. 647.**

United States District Court
E. D. Arkansas, E. D.
Sept. 22, 1959.

Nat M. Norton of Norton & Norton, Forrest City, Ark., and Jimason J. Daggett of Daggett & Daggett, Marianna, Ark., for plaintiff.

Richard B. McCulloch of Mann & McCulloch, Forrest City, Ark., for defendant.

HENLEY, Chief Judge.

This is an action brought by N. P. Dean, Trustee of the Estate of Fred Zuckerman, a bankrupt, against the Planters National Bank of Hughes, Arkansas, to recover the sum of $5,250 paid to the bank by Zuckerman in January, 1956, and which the plaintiff contends amounted to a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S. C.A. § 96. The cause has been tried to the Court without a jury, and the Court now files this opinion, incorporating herein its findings of fact and conclusions of law, as permitted by Rule 52(a), F.R. Civ.P. 28 U.S.C.A.

Prior to his adjudication as a bankrupt in March, 1956, Zuckerman was a merchant in Hughes, Arkansas, a small city with a population of about 2,000. During his business career he was a regular customer of the defendant bank, and was more or less continuously indebted to it from 1949 onwards. In January, 1955, he borrowed the sum above mentioned from the bank, giving his note therefor; his mother, Mrs. Lena Zuckerman, was either an endorser or co-maker of this note. As security for the payment of the note Zuckerman executed and delivered to the bank a chattel mortgage covering certain fixtures and appliances in his store, which mortgage, bearing the signed endorsement of the bank that it was to be filed but not recorded, was filed with the Circuit Clerk and ex-officio Recorder of St. Francis County, Arkansas. Zuckerman, however, did not acknowledge the execution of this instrument, and the Notary Public in the employ of the bank failed to sign the certificate of acknowledgment on the back of the mortgage, nor did she affix her notarial seal thereto.

After this loan was made, Zuckerman embarked upon a course of personal conduct which caused his financial condition to deteriorate to such an extent that by January, 1956, and prior to the time that the loan was repaid he was insolvent. In this connection, it was stipulated that on January 9, 1956, his assets amounted to $9,780 plus whatever other assets might be shown by the defendant to have existed; it was further stipulated that his liabilities on that date amounted to $52,-295.16, including the note to the bank, and that no creditor, other than the bank, claimed to hold any security. At the trial the only other assets developed were some bank deposits totaling less than $100.

Zuckerman's note to the bank fell due on December 15, 1955, and was not paid on that date. A few days later the president of the bank, Mr. Carl Williams, contacted Zuckerman, who informed him that he was working something out and that payment would be made in the immediate future. On or about January 1, Zuckerman informed Williams that he was selling his store and would be over to see him about the loan. The store was sold for a price of $8,000 on or about January 4, 1956. On that same date a check for $6,300, as part payment of the purchase price was drawn by the purchaser in favor of Zuckerman and was deposited with the bank for collection. Said check being duly honored, Zuckerman's indebtedness to the bank was discharged out of the proceeds. Mr. Williams testified that when he received this check, he knew that it represented the major portion of the sale price that Zuckerman was to receive although he did not know the exact amount that was to be paid for the store.

As has been indicated, there is no question that Zuckerman was insolvent when the payment to the bank was made. On March 2, 1956, less than two months after the payment, a petition in bankruptcy was filed against Zuckerman, and he was adjudicated a bankrupt on March 19. Subsequently, the plaintiff was named as trustee, and he commenced this action in February of 1958.

■■ The burden in this case is upon the plaintiff to establish by a preponderance of the evidence that the payment to the bank constituted a voidable prefer-

ence. Canright v. General Finance Corporation, 7 Cir., 123 F.2d 98.' The elements of such a preference which the plaintiff must establish may be summarized as follows: (1) There must be a transfer by a debtor to a creditor of money or property for an antecedent debt, which transfer results in a diminution of the debtor's estate. (2) Such transfer must have occurred within four months of the filing of the petition in bankruptcy. (3) The debtor must have been insolvent at the time of the transfer. (4) It must appear that the transferee as a result of the transfer obtained an advantage over other creditors of the same class. (5) And, finally, it must appear that at the time of the transfer the transferee or "his agent acting with reference thereto" knew or had reasonable cause to believe that debtor was insolvent. 11 U.S.C.A. § 96, subs. a, b; Dinkelspiel v. Weaver, D.C.Ark., 116 F.Supp. 445, and authorities there cited.

The first three elements above mentioned are unquestionably present in this case, and the controversy hinges upon the existence of the fourth and fifth. It is the theory of the plaintiff that on account of the absence of an acknowledgment on the bank's mortgage, that instrument was not a lien as to third parties, that the bank was simply an unsecured creditor and thus by virtue of the payment to it gained a substantial advantage over the other unsecured creditors. Plaintiff further contends that when the payment was made, the bank or its "agent acting with reference thereto" either knew of Zuckerman's insolvency or had reasonable cause to believe that such insolvency existed. The validity of both of those contentions is denied by the defendant.

■■ In a case of this kind it is clear that a creditor is not deemed to be "secured" merely because he has a lien which is good as between the parties; his security also must constitute a lien as to third persons. 11 U.S.C.A. § 110; Mercantile Trust Co. v. Kahn, 8 Cir., 203 F.2d 449; Bridgewater v. Schaefer, 5 Cir., 164 F.2d 447; Tennessen v. First

National Bank, D.C.Wis., 146 F.Supp. 511. It is equally clear that the question whether the bank's chattel mortgage is a lien as to third persons must be decided by reference to the law of Arkansas. Mercantile Trust Co. v. Kahn, supra; Harrison v. Merchants National Bank, 8 Cir., 124 F.2d 871; In re Patterson, D.C.Mo., 139 F.Supp. 830.

■ The relevant Arkansas statute (Ark.Stats.1947, § 16–201) provides that a chattel mortgage may be endorsed "to be filed but not recorded", and that when it is so endorsed and filed with the proper circuit clerk it becomes a lien on the property covered thereby "from the time of filing", and that thereafter it constitutes "notice to all the world of the contents thereof without further record". A chattel mortgage that is not filed in accordance with the statute, while good as between the parties thereto, is not a lien as to third persons. Bank of Weiner v. Jonesboro Trust Co., 168 Ark. 859, 271 S.W. 952; Bankers Trust Co. v. Hudson, 149 Ark. 472, 232 S.W. 587; Dedman v. Earle, 52 Ark. 164, 12 S.W. 330; Bowen v. Fassett, 37 Ark. 507.

■ In the instant case, as has been pointed out, the chattel mortgage was executed by the bankrupt and delivered to the bank; the bank endorsed it "To be Filed But Not Recorded", signed the endorsement, and tendered the instrument to the circuit clerk who accepted and filed it. But, by reason of the absence of any acknowledgment, it was not eligible for filing, and was not a lien as to third persons, including the other creditors of the bankrupt and the trustee. Bank of Weiner v. Jonesboro Trust Co. supra.

In Weiner, the facts were that the notary public filled out the certificate of acknowledgment and affixed his seal thereto, but did not sign the certificate. As in the case at bar, the mortgage there was tendered to the circuit clerk and was accepted by him and filed. In holding that the defectively acknowledged mortgage was not a lien as to third persons the Court said:

"The failure of the notary public to sign the certificate of acknowledgment to the chattel mortgage, executed to the bank, rendered the certificate void, and that mortgage was in effect an unacknowledged instrument. Davis v. Hale, 114 Ark. 426, 170 S.W. 99. This being true, the chattel mortgage was not entitled to be recorded, and the fact that it was filed with the clerk is unavailing, and while it was good between the parties thereto, it constituted no lien on the property therein described as to third parties, and was not binding on them, even though they had had actual notice of it. Cross v. Fombey, 54 Ark. 179, 15 S.W. 461". 168 Ark. at page 861, 271 S.W. at page 953.

If, as the Court is persuaded, the mere failure of the notary to execute the certificate of acknowledgment prevents the chattel mortgage from being a lien as to third parties, it follows *a fortiori* that there is no lien as to such parties where the mortgagor in fact fails to acknowledge the execution of the instrument at all. And the court is convinced from the evidence that there was such a failure in this case. According to the testimony of the notary public, the instrument in question was prepared by some other employee of the bank and was simply laid upon her desk for the formal execution of the certificate; Mr. Zuckerman never acknowledged to her that he had executed the instrument, and she failed to execute the certificate.

Since the mortgage was not a lien as to third parties, the bank was simply an unsecured creditor, as far as this case is concerned, and receipt of full payment of its note gave it a very distinct advantage over other creditors of the same class, who have received only a portion of their respective claims. Thus, the fourth element of the plaintiff's cause of action must be deemed to have been established.

■ Turning to the question of whether the defendant or its agents knew or had reasonable cause to believe that Zuckerman was insolvent at the time he discharged his note, it may be noted that the law does not require the plaintiff to prove that the defendant had actual knowledge of the bankrupt's insolvency, or that it believed that he was insolvent, or that it intended to receive a preference. 4 Remington On Bankruptcy, Rev. Ed., Section 1707, p. 329; 6 Am.Jur. "Bankruptcy", Sections 1071–1072; 3 Collier on Bankruptcy, 14th Ed., Section 60.53. On the other hand, the payment to the bank is not to be characterized as a voidable preference merely because the bank may have had some suspicion with regard to the debtor's condition or may have been suffering some anxiety with regard to its debt. 4 Remington op. cit., Section 1709, pp. 334, et seq.; 3 Collier, op. cit., Section 60.53, pp. 997, et seq., Grant v. National Bank, 97 U.S. 80, 24 L.Ed. 971. However, if the defendant had knowledge of facts sufficient to put a reasonably prudent business man upon inquiry as to the financial status of his debtor, then it is charged with knowledge of such facts as inquiry would have revealed. Grant v. National Bank, supra; Marks v. Goodyear Rubber Sundries, Inc., 2 Cir., 238 F.2d 533, 62 A.L.R.2d 770; C. A. Swanson & Sons Poultry Co. v. Wylie, 9 Cir., 237 F.2d 16; Gelbman v. Canton National Bank, D.C.Ohio, 150 F.Supp. 804; Dinkelspiel v. Weaver, supra.

■ The question of reasonable cause to believe in the insolvency of a transferor is one of fact; and since each case must be decided in the light of its own facts and combinations of circumstances, the reported decisions, which are extremely numerous, are mainly helpful as showing the various factors that are considered by the courts and the varying emphases that are placed upon such factors either standing alone or in combination with others. In this connection, Remington says:

"The factor of whether the creditor had 'reasonable cause to believe' that the debtor was insolvent at the time of the transfer or payment alleged to be voidable as a preference presents a question of fact. Most

of the decisions bearing on this point involve a variety of circumstances concurring in the case at bar and reach a result based on consideration of the circumstances, pro and con, taken as a whole. Where such is the case, they have little weight as precedents unless the same combination of circumstances recurs * * * It should be borne in mind * * * that any decision cited is likely to turn on a combination of facts in addition to those specifically referred to, without which the result might have been different." 4 Remington, op. cit. pp. 327–328.

With regard to the quality of evidence in cases of this kind, the same writer says: "Direct proof of knowledge and belief is admissible if it can be obtained, as by showing admissions of knowledge, and such proof is conclusive unless adequately controverted; but the creditor's 'reasonable cause to believe' in the debtor's insolvency at the time of the transfer can be, and usually is, established by circumstantial evidence." (Ibid., p. 329)

■ While no useful purpose would be served in attempting to list all of the factors which have been considered by the courts in determining the existence or non-existence of reasonable cause to believe that the transferor was insolvent, nevertheless there are a number of recurrent factors which are usually weighed and considered, such as: under-capitalization of the debtor, sales below cost, checks drawn on a bank account and payment refused by reason of insufficient funds, a consistent pattern of overdrafts, operating losses, irregular, unusual or criminal conduct, secretiveness, slow payment, collection measures taken by other creditors, rescue of the debtor from embarrassment by friends or relatives, and reliance on financial statements or reports. See Gelbman v. Canton National Bank and Dinkelspiel v. Weaver, both supra; and see also 4 Remington, op. cit., Sections 1710.1 through 1810.9.

■ The Court has considered the conflicting evidence on this issue and the arguments of counsel, and has come to the conclusion and finds from a preponderance of the evidence that at the time of the payment of its note the bank knew, or had reasonable cause to believe that Zuckerman was insolvent.

As has been said, Zuckerman's note was not paid when it fell due, a fact which was, of course, known to the bank. In addition, Mr. Williams learned shortly thereafter that the note was to be paid out of the proceeds of the sale of Zuckerman's business, and he knew that the major portion of the price that Zuckerman was to receive was $6,300, notwithstanding the fact that prior to the making of the loan Zuckerman had submitted a financial statement which showed that as of January 1, 1955, his business had a net worth of $91,000.[1]

The records of the bank covering Zuckerman's account were introduced in evidence. Those records reflect that on December 15, 1955, when the note fell due, Zuckerman's beginning balance was only $70.88; that in the course of the day the bank honored checks amounting to $56.-84, leaving a closing balance of $14.04.

The low balance, standing alone, is not of too great importance since Zuckerman frequently had a very small balance. What is more significant is that as of that date he had made no deposits at all since November 21, which was highly unusual. A further examination of the ledger sheets discloses that from October through December 1955, a busy season for merchants in Eastern Arkansas, Zuckerman's total deposits were only $5,-306.32, as compared to $34,166.44 for the corresponding period of the preceding year. His total deposits for 1955 were $44,906.86, as compared with $112,794.21 in 1954, and $205,041.47 in 1953. His final deposit which was made on December 27, 1955, and which was the only deposit made in that month, was $900.63, a nominal sum for a retail merchant. His

[1]. This figure included the stock in an Esso service station of unspecified value, but which could not have amounted to much.

deposit for the same month in 1954 was $19,267.93. In December 1953 he deposited $3,940.30, but in November of that year he had deposited $18,846.08.

Prior to September, 1954, Zuckerman had frequently overdrawn his account; but from September 27 of that year to June 23, 1955, he had no overdrafts, nor did the bank have occasion to dishonor any of his checks on account of insufficiency of funds.[2] From June 23, 1955 to January 7, 1956, however, he wrote 93 checks which were not paid when presented.

It is inconceivable to the Court that Mr. Williams had no knowledge of the status of Zuckerman's account, particularly after the latter failed to pay the note when it fell due. The facts disclosed by the bank's own records were danger signals which the bank was not free to ignore.

In the Court's opinion, the presence of this combination of circumstances was sufficient to put any reasonably prudent business man on inquiry as to Zuckerman's financial status, and had inquiry been made and reasonably pursued, Zuckerman's insolvent condition must have come to light immediately. The defendant would justify its failure to make inquiry by the fact that it relied upon its mortgage; but the statutory test is what the bank knew or had reason to believe with respect to the financial condition of its debtor, not its belief as to its own status as a secured creditor.

Although the issue was not raised by the pleadings, the defendant makes the argument that between the time that it received its payment and the time that the Trustee filed this suit, a period of nearly two years, Mrs. Zuckerman, who was also liable on the note, became insolvent, that the defendant on that account now has no effective recourse against her, and that the Trustee's action should be held barred by laches and estoppel. The Court cannot accept that argument.

Laying to one side the fact that laches and estoppel were not pleaded by the defendant, and assuming for purposes of argument that those defenses might under certain circumstances be valid in a case of this kind, there is no sufficient evidence in this case to support a finding that Mrs. Zuckerman has in fact become insolvent, or as to when and under what circumstances such insolvency occurred. It is not suggested that her insolvency, if it in fact exists, was brought about by any act or omission of the Trustee.

The defendant actually received from Zuckerman the sum of $5,271.87, including interest, and from what has been said it follows that the Trustee is entitled to judgment against the defendant for the said sum, plus its costs herein.

It is therefore, by the Court considered, ordered and adjudged that the plaintiff, N. P. Dean, as Trustee of the Estate of Fred Zuckerman, a bankrupt, have and recover of the defendant, The Planters National Bank of Hughes, Arkansas, the sum of $5,271.87, plus all his costs herein.

---

2. Mr. Williams became president of the bank on October 14, 1954, and put an end to the practice that had prevailed of letting some depositors overdraw their accounts. Under his administration excessive checks were not paid, and the depositors writing such checks were charged fees of 25 cents for each check that was dishonored. It will be noted that Zuckerman had not overdrawn his account for about three weeks prior to Mr. Williams' taking over the bank.