**Milton M. COHN, Trustee of Lincoln Iron & Steel Co., Bankrupt, Plaintiff,**

v.

**INDUSTRIAL SALVAGE MATERIAL CO., a Wisconsin corporation, Defendant.**

No. 63–C–131.

United States District Court
E. D. Wisconsin.

Feb. 25, 1965.

Harry A. Kovenock, Daniel W. Howard, Milwaukee, Wis., for plaintiff.

Arthur Magidson and Robert L. Hersh, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This action was commenced by the trustee in bankruptcy of Lincoln Iron & Steel Company (hereinafter referred

to as "Lincoln") to recover, as an alleged preferential payment, $20,000 paid to Industrial Salvage Material Company (hereinafter referred to as "Industrial") by the bankrupt on March 30, 1962.

Lincoln filed a petition for an arrangement under Chapter XI of the Bankruptcy Act (11 U.S.C.A. § 701 et seq.) on May 24, 1962. On July 24, 1962, Lincoln was adjudicated a bankrupt.

The payment in question was made on a promissory demand note given by the bankrupt to the defendant on October 5, 1958. The amount of the note was $25,000, and interest was at the rate of 6 per cent per annum.

A payment of $2,000 was made on the principal in July 1960. Interest payments were regularly and timely made.

In late December 1961, the president of the defendant called Sidney Cohen, former employee and officer of the bankrupt and a substantial stockholder in the corporation which wholly owned the bankrupt. The president of the defendant asked when payments were going to be made on the note in question and on another note. Cohen referred the defendant's president to Irving Fisher, assistant to the president of the bankrupt. In the course of this conversation defendant's president mentioned that he had heard rumors that Lincoln was having difficulty meeting its obligations. Cohen replied that rumors were common in the scrap metal industry.

Subsequently Industrial worked out a schedule of payments on the notes with Lincoln. Pursuant to this schedule $5,000 was paid on January 4, 1962. Of this amount, $3,000 was on the note in question and $2,000 was on the other note. Scheduled payments were not made in February or March of 1962. Grant Sloniker, general manager and bookkeeper of Industrial, wrote Lincoln on March 6, 1962, and demanded payment on both notes. Fisher replied that $25,000 would be paid on or about March 26, 1962, and the balance within forty-five days of March 26, 1962. Fisher indicated that the payment was delayed because the scrap metal export business was slow during the winter months but would pick up with spring shipments. It is a matter of common knowledge that scrap iron and metal are transported mostly by boat, also that the shipping season in the Great Lakes does not begin until spring.

On March 30, 1962, Fisher gave Sloniker twenty $1,000 checks. Fifteen of these were dated March 30, 1962, and five were dated April 10, 1962. The stubs of the twenty checks were dated, one each month, for the period commencing June 1960 and ending January 1962. The checks were deposited as dated and without incident. Sloniker testified that Industrial sought to collect the Lincoln note and other obligations because of an impending substantial tax liability. He further testified that at the time Fisher delivered the twenty checks to him, he had no knowledge of Lincoln's general financial difficulties.

The question presented in this case is whether the facts, as set forth above, are sufficient to support the conclusion that the payment of March 30, 1962, was a voidable preference.

The elements of a voidable preference are as follows: (1) There must be a transfer of property owned by the debtor; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made or suffered by the debtor while insolvent; (5) within four months of bankruptcy; (6) the effect of which will enable the creditor to obtain a greater percentage of his debt than other creditors of the same class; and (7) the creditor receiving the transfer or to be benefited thereby, or his agent, must have reasonable cause at the time the transfer is made to believe that the debtor is insolvent. Failure to establish any of the above elements results in the failure to establish a voidable preference. "The burden of proving each and every one of these elements, by a preponderance of the evidence, is upon the trustee." Moran Bros., Inc. v. Yinger, 323 F.2d 699,

701 (10th Cir. 1963); Canright v. General Finance Corporation, 123 F.2d 98 (7th Cir. 1941).

The issue in this case centers around the question of whether the plaintiff has met his burden of proof of showing that Industrial had reasonable cause on March 30, 1962, to believe that Lincoln was insolvent.

The plaintiff urges that facts exist which would lead an ordinarily prudent businessman to have reasonable cause to believe that Lincoln was insolvent. The facts are that Industrial's president had heard rumors that Lincoln was in financial difficulty in December 1961; and that the stubs of the checks delivered to Industrial on March 30, 1962, were dated, one each month, from June 1960 until January 1962. This last fact, the trustee argues, shows that Lincoln was not meeting its obligations as early as June 1960.

There are other facts and circumstances which must be considered. The scrap metal industry is one which is prone to rumors. Two payments were made on the note in question: $2,000 in July 1960 and $3,000 in January 1962. Interest payments on the note were maintained. There is no evidence that any demand for payment on the note was made prior to December 1961, at which time demand was made because Industrial was calling in some of its obligations in order to meet an impending tax liability. The failure of Lincoln to make payment in February and on time in March is not in itself sufficient to create a reasonable cause to believe Lincoln was insolvent. Moran Bros., Inc. v. Yinger, supra. This is particularly true in view of the seasonal character of the scrap metal export business.

Although Cohen had received complaints from suppliers of Lincoln about its failure to meet its obligations, there is no evidence that Industrial or its agents knew of these complaints, and further, the suppliers continued to deal with Lincoln. Mr. Sloniker, Industrial's general manager and bookkeeper, testified that when he received payment on the note in March 1962, he had no knowledge of Lincoln's difficulties.

In determining whether there was reasonable cause to believe that a preference would be effected by a transfer, each case is to be examined in light of its own facts and surrounding circumstances. McDougal v. Central Union Conference Ass'n of Seventh Day Adventists, 110 F.2d 939 (10th Cir. 1940).

Viewing the facts and circumstances of this case, the Court concludes that the trustee has not established by a preponderance of the evidence that Industrial had reasonable cause to believe that Lincoln was insolvent at the time of the transfer on March 30, 1962. The trustee has not established facts sufficient to put Industrial on inquiry as to Lincoln's condition under the rule set forth in Tennessen v. First National Bank of Kenosha, 146 F.Supp. 511 (E.D. Wis.1956).

The Court finds and concludes that the trustee has failed to meet his burden of proof and establish a voidable preference.

The foregoing decision constitutes the Court's findings of fact and conclusions of law in conformity with Rule 52 of the Federal Rules of Civil Procedure.

The clerk is directed to enter judgment in favor of the defendant, dismissing this action.