**Martin M. GREEN, Trustee for the Liquidation of Investment Securities Corp., Appellant,**

v.

**A. G. EDWARDS & SONS, INC., Appellee.**

**No. 77–1791.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1978.

Decided June 12, 1978.

Rehearing and Rehearing En Banc Denied Sept. 12, 1978.

Wilfred R. Caron, Securities Investor Protection Corp., Washington, D. C., argued, William H. Seckinger, Washington, D. C., and Harry O. Moline, Jr., St. Louis, Mo., on brief, for appellant.

William A. Richter, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., argued, Lewis R. Mills, St. Louis, Mo., on brief, for appellee.

Before ROSS and HENLEY, Circuit Judges, and LARSON,* Senior District Judge.

PER CURIAM.

Martin M. Green, trustee in bankruptcy for Investment Securities Corporation (ISC), commenced this action to set aside ISC's allegedly preferential transfer to A. G. Edwards & Sons, Inc. (Edwards). The district court, sitting without a jury, rejected the trustee's claim and held that the transfer was not a voidable preference under the Bankruptcy Act.

The parties stipulated many of the important facts. Edwards is a registered broker-dealer and a member of the National Association of Securities Dealers (NASD). ISC, formerly a principal market maker in the common stock of PEC Industries, Inc. (PEC), was also a broker-dealer and NASD member until it ceased operations on July 3, 1974.

On June 20, 1974, Edwards, acting as broker for two of its customers, contracted to sell 4500 shares of PEC common stock to ISC at $31.25 per share.[1] In unrelated transactions, Edwards had purchased 700 PEC shares from ISC. This reduced the number of shares in the June 20 transaction to 3800. Edwards delivered the PEC stock together with sight drafts totaling $118,750, the contract price, to its bank, the Mercan-

---

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

1. Edwards immediately paid its customers and obtained possession of the stock certificates.

tile Trust Company (Mercantile). The sight drafts and stock were to be forwarded for payment to ISC's bank, the First National Bank of Clayton.

On July 2, 1974, Mercantile notified Edwards that the sight drafts had not been paid. Raymond J. Kalinowski, Edwards' executive vice president, was informed of the non-payment later that afternoon. The next morning, July 3, Kalinowski, together with two other Edwards employees, Bill Winter and Donald Bernstein, visited ISC's Clayton, Missouri office to secure collection. They were greeted by Richard D. Hayes, ISC's head cashier, and Curtis Mann, ISC's counsel; ISC's president and vice president were both unavailable.

After some preliminary discussion, Kalinowski informed Hayes that unless Edwards received immediate payment, it would sell the PEC stock and sue ISC for the difference between the price received and the $118,750 contract price. Kalinowski additionally stated that he would notify the NASD of ISC's failure to honor its obligations. Hayes explained that ISC was experiencing a temporary cash shortage. He advised Kalinowski that ISC anticipated consummating a large transaction (10,000 shares of PEC common stock) in the afternoon. This, allegedly, would have provided ISC with sufficient funds to pay Edwards.

The parties briefly negotiated and agreed that Edwards would refrain from selling the 3800 PEC shares if Hayes placed an additional 10,000 shares of PEC stock in escrow with the First National Bank of Clayton, endorsed in Edwards' name. If ISC completed its proposed afternoon sale and paid $118,750 to Edwards by 2:30 p. m., the additional 10,000 shares would be released. If, however, ISC did not complete the sale, Edwards could sell as many of the 13,800 shares as necessary to obtain the $118,750 contract price. It is this transfer

of 10,000 additional PEC shares that the trustee seeks to set aside as a voidable preference.

ISC did not complete the afternoon transaction by 2:30 p. m. and, after an unsuccessful attempt to reach ISC by telephone, Edwards, pursuant to the agreement, sold all 13,800 PEC shares to a third party for $118,750. The parties do not contest the reasonableness of this price.

## I.

Under § 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1), a transfer is preferential when the debtor:

(1) [makes] or [suffers] a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt . . ., (4) while insolvent, and (5) within four months of bankruptcy . . ., (6) [enabling] the creditor to obtain a greater percentage of his debt than some other creditor of the same class.

3 W. Collier on Bankruptcy ¶ 60.02 at 758–59 (14th ed. 1976); *see Herzog v. Mandan Security Bank (In re PRS Products, Inc.)*, No. 77–1747, 574 F.2d 414 at 416 n. 2 (8th Cir. 1978). Under § 60(b), 11 U.S.C. § 96(b), a trustee may set aside transfers that are preferential under § 60(a) if "the creditor receiving or to be benefitted by the preference had reasonable cause to believe the debtor was insolvent" at the time of the transfer. 3 W. Collier on Bankruptcy ¶ 60.-02 at 759 (14th ed. 1976); *see Kenneally v. First National Bank of Anoka,* 400 F.2d 838, 844 n. 7 (8th Cir. 1968), *cert. denied,* 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969); *Engelkes v. Farmers Co-Operative Co.,* 194 F.Supp. 319, 323 (N.D.Iowa 1961).

The parties have stipulated that ISC was insolvent[2] when it transferred the additional 10,000 shares to Edwards. None of the

---

2. The Bankruptcy Act defines insolvency in 11 U.S.C. § 1(19):

A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts . . ..

*See Herzog v. Mandan Security Bank (In re PRS Products, Inc.),* No. 77–1747 at 416 (8th Cir. 1978). This "balance sheet test" examines whether the bankrupt's assets exceed liabilities. 1 W. Collier on Bankruptcy ¶ 1.19 at 98 (14th ed. 1974).

other elements of § 60(a)(1) is in material dispute.[3] The principal issue before the district court and in this appeal is whether Edwards had reasonable cause to believe ISC was insolvent at the time of the transfer.[4]

## II.

In this Circuit, a district court's finding that a creditor had reasonable cause to believe a debtor was insolvent at the time of an allegedly preferential transfer is reviewed under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a).[5] *See Bostian v. Levich,* 134 F.2d 284, 287 (8th Cir. 1943); *Harrison v. Merchants National Bank,* 124 F.2d 871, 874 (8th Cir. 1942); cf. *Herzog v. Mandan Security Bank (In re PRS Products, Inc.), supra,* at 417 (reviewing bankruptcy court's finding of reasonable cause to believe under clearly erroneous doctrine); *Employers Mutual Casualty Co. v. Hinshaw,* 309 F.2d 806, 809 n. 2 (8th Cir. 1962) (clearly erroneous test applied to district court's findings when, reviewing bankruptcy court's order, it exercises discretion to receive additional evidence). *See also American National Bank & Trust Co. v. Bone,* 333 F.2d 984, 986 (8th Cir. 1964); *H. D. Lee Co. v. Bostian,* 187 F.2d 942, 946–47 (8th Cir. 1951).[6] Such a finding will only be held clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *See Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Farmers Bank of Clinton v. Julian,* 383 F.2d 314, 320 (8th Cir.), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). *See also Magidson v. Duggan,* 212 F.2d 748, 752–53 (8th Cir.), *cert. denied,* 348 U.S. 883, 75 S.Ct. 124, 99 L.Ed. 694 (1954).

In determining whether a creditor had reasonable cause to believe the debtor was insolvent, several general propositions emerge from the cases and commentaries but each case, ultimately, must be decided on its own facts, *see Harrison v. Merchants National Bank, supra,* 124 F.2d at 873; *Engelkes v. Farmers Co-Operative Co., supra,* 194 F.Supp. at 328; *Dean v. Planters National Bank of Hughes,* 176 F.Supp. 909, 913 (E.D.Ark.1959); 3 W. Collier on Bankruptcy ¶ 60.52 at 1055, 1071 (14th ed. 1976). The burden is on the bankruptcy trustee to prove by a preponderance of the evidence that the creditor had reasonable cause to believe the debtor was insolvent at the time of the transfer. *Kenneally v. First National Bank of Anoka, supra,* 400 F.2d at 844; *Farmers Bank of Clinton v. Julian, supra,* 383 F.2d at 324; *Harrison v. Merchants*

**3.** Appellee alternatively argues, apparently for the first time on appeal, that the transfer was not preferential because it was not for or on account of an antecedent debt. This argument does not warrant extended discussion. It is clear that ISC transferred 10,000 additional shares to secure payment of a previous debt. This satisfies § 60(a)'s requirement that the transfer be for or on account of an antecedent debt. *See generally* 3 W. Collier on *Bankruptcy* ¶ 60.19 (14th ed. 1976).

**4.** Throughout this litigation, the parties seemed to have assumed the transfer occurred the morning of July 3, 1974. In response to questions from the bench, both sides have briefed this question further. Appellant now contends the transfer occurred in the afternoon. Obviously, the trustee's job of proving Edwards had reasonable cause to believe ISC was insolvent would be easier if the transfer were deemed to have occurred in the afternoon, when Edwards, after a futile attempt to contact ISC by telephone, sold the escrowed shares. In view of our decision, we need not resolve this dispute. We assume, consistent with the parties' assumption, that it occurred, as appellee argues, the morning of July 3.

**5.** Fed.R.Civ.P. 52(a) provides, in part:

In all actions tried upon the facts without a jury . . . the court shall find the facts specially . . . .. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

**6.** It appears that the Second and Fifth Circuits, viewing the issue as a mixed question of law and fact, apply a broader standard of review. *See, e. g., In re Hygrade Envelope Corp.,* 366 F.2d 584, 587 (2d Cir. 1966); *Mayo v. Pioneer Bank & Trust Co.,* 297 F.2d 392, 395 (5th Cir. 1961).

*National Bank, supra,* 124 F.2d at 874; *Dean v. Planters National Bank of Hughes, supra,* 176 F.Supp. at 911–12; 3 W. Collier on Bankruptcy ¶ 60.54 at 1075 (14th ed. 1976); *Engelkes v. Farmers Co-Operative Co., supra,* 194 F.Supp. at 323.

■ The act requires neither actual knowledge of nor belief in the debtor's insolvency. All that is necessary is a reasonable cause to believe the debtor is insolvent. A creditor's mere apprehension or suspicion that the debtor is suffering financial reverses or may be insolvent is insufficient. *See Grant v. National Bank,* 97 U.S. 80, 81–83, 24 L.Ed. 971 (1877); *Mayo v. Pioneer Bank & Trust Co.,* 297 F.2d 392, 394–95 (5th Cir. 1961); *Harrison v. Merchants National Bank, supra,* 124 F.2d at 873; *Brown Shoe Co. v. Carns,* 65 F.2d 294, 297 (8th Cir.), *cert. denied,* 290 U.S. 695, 54 S.Ct. 130, 78 L.Ed. 598 (1933); *Engelkes v. Farmers Co-Operative Co., supra,* 194 F.Supp. at 328; *Dean v. Planters National Bank of Hughes, supra,* 176 F.Supp. at 913; 3 W. Collier on Bankruptcy ¶ 60.53 at 1057, 1066.1 (14th ed. 1976).

■ It is clear, however, that a creditor may not ignore a debtor's precarious state of affairs. When circumstances exist that would incite a prudent business person to inquire into the debtor's affairs, a creditor who refuses or neglects to do so will be charged with notice of all facts a reasonably diligent inquiry would have disclosed. *See Herzog v. Mandan Security Bank (In re PRS Products, Inc.), supra,* at 417; *Kenneally v. First National Bank of Anoka, supra,* 400 F.2d at 844; *Eureka-Carlisle Co. v. Rottman,* 398 F.2d 1015, 1017–18 (10th Cir. 1968); *Edwards & Deutsch Lithographing Co. v. Rottman,* 398 F.2d 1020, 1022 (10th Cir. 1968); *In re Hygrade Envelope Corp.,* 366 F.2d 584, 586–87 (2d Cir. 1966); *Shaw v. United States Rubber Co.,* 361 F.2d 679, 682 (5th Cir. 1966); *Employers Mutual Casualty Co. v. Hinshaw, supra,* 309 F.2d at 809; *Mayo v. Pioneer Bank & Trust Co., supra,* 297 F.2d at 394–95; *Coder v. McPherson,* 152 F. 951, 953 (8th Cir. 1907); *Engelkes v. Farmers Co-Operative Co., supra,* 194 F.Supp. at 328; *Dean v. Planters*

*National Bank of Hughes, supra,* 176 F.Supp. at 913; 3 W. Collier on Bankruptcy ¶ 60.53 at 1063 (14th ed. 1976).

In *Herzog v. Mandan Security Bank (In re PRS Products, Inc.), supra,* 417, this Court recently stated:

> The question is whether [the creditor] had knowledge or notice of facts and circumstances [that] would incite a person of reasonable prudence under similar circumstances to make inquiry. If so, a further question is whether inquiry by [the creditor] would lead to a development of facts essential to a knowledge of the situation. If it would, [the creditor] is charged with the knowledge thereof [citations omitted].

### III.

■ At the July 3, 1974, meeting, Edwards' executives were informed that ISC was experiencing a cash shortage and would not be able to make payment until after the proposed afternoon sale. Kalinowski testified that a broker-dealer's failure to honor its transactions with another broker-dealer did not occur frequently. Edwards was also told that ISC had used whatever bank credit was available and that it could obtain no more. Kalinowski was shown ISC's audited financial statement dated May 17, 1974, reflecting the company's financial position at March 31, 1974. This statement indicated ISC had assets exceeding liabilities of $90,000. Kalinowski failed to inquire and there were no discussions about ISC's current financial position. Kalinowski testified that he knew federal securities laws require a broker-dealer to prepare monthly trial balances. Thus, he knew ISC had available a trial balance more recent than the audited financial statements he saw. We think this knowledge coupled with the disproportionate size of the collateral and the other facts and circumstances was sufficient to require a further inquiry into ISC's affairs. Kalinowski could have requested ISC's most recent trial balance, or, at a minimum, inquired about ISC's current financial condition. According to the record, no such inquiries were made.

The district court merely found that the facts and circumstances were insufficient to give Edwards reasonable cause to believe ISC was insolvent. The court did not discuss the question whether the circumstances required Edwards to inquire further into ISC's affairs. Our review of the record satisfies us that the circumstances surrounding ISC's transfer to Edwards of 10,000 additional PEC shares to secure payment of the purchase price for 3800 shares were sufficient to incite a reasonably prudent broker-dealer to inquire further into ISC's affairs. We, therefore, remand this action to the district court to determine what a reasonably prudent inquiry by Edwards would have disclosed.[7]

Remanded.

---

[7]. While a majority of the panel prefers not to reach this issue until the district court has had an opportunity to make appropriate findings, Judge Henley is of the view that a further inquiry would have disclosed ISC's insolvency.

According to appellee, the record does not contain evidence indicating that a further inquiry would have disclosed ISC's insolvency. Pursuant to a stipulation, ISC was, in fact, insolvent at the time of the transfer. The only issue remaining is whether a reasonably diligent inquiry would have disclosed such insolvency. Because of the stipulation many of the facts surrounding ISC's insolvent position, which normally would have been offered by the trustee, were not made part of the record. A court is not, however, thereby precluded from concluding that a diligent inquiry would have revealed insolvency if the record contains sufficient evidence from which such a conclusion could be drawn.

Kalinowski testified that he knew federal securities laws require a broker-dealer to prepare monthly trial balances. Thus, he knew ISC had available a trial balance more recent than the audited financial statements he saw.

ISC, in fact, had prepared a July 2, 1974 trial balance. Although this financial statement indicated that ISC's assets exceeded liabilities by approximately $120,000, a bank loan of $355,000 was not included. Despite appellee's suggestion to the contrary, the $355,000 bank loan would have been included in ISC's total indebtedness in determining whether it was insolvent under § 1(19) of the Bankruptcy Act, see n. 2 supra. Section 1(14)'s definition of debt includes any "debt, demand or claim provable in bankruptcy" as long as it is susceptible of, and entitled to, being proved and, if unliquidated, capable of being liquidated. Contingent liabilities are included in this computation. See 1 W. Collier on Bankruptcy ¶ 1.19 at 130.4–130.5 (14th ed. 1974). Kalinowski testified that had he viewed the July 2 trial balance, he would have asked why the bank loan was absent in light of ISC's apparent inability to obtain further credit.

In the circumstances disclosed by this record, Judge Henley would hold that Edwards is chargeable with knowledge of ISC's insolvency and would set aside the alleged preferential transfer.