JULIAN ABELE COOK, Jr., District Judge.
 

 This is an appeal from a decision by a district judge who concluded that a bankruptcy trustee could not recover the repayment of a $100,000 loan by a debtor to a creditor. Appellant generally alleges that the repayment constituted an impermissible granting of a preference to one creditor over other creditors, thereby violating the 1980 provisions of 11 U.S.C. § 547(b).
 
 [1]
 
 For the reasons that are set forth below, we affirm the decision of District Judge L. Clure Morton.
 

 I
 

 A. Fassnacht & Sons, Inc. filed a petition in bankruptcy in November 1980. Prior to that time, it had been in business in Chattanooga, Tennessee for more than one hundred years. Appellee, Suzanne Fassnacht, is the wife of John Fassnacht, who became president of this family business in 1965. She was elected to the board of directors in 1971. Five years later, Appellee assumed the positions of treasurer and assistant to the president. She remained as an officer of the company until June 1980 and continued to serve on the board of directors through the filing of the bankruptcy petition. Her son, Rick Fassnacht, served as vice president of the company from 1971 until his resignation shortly before the bankruptcy petition was filed. Her daughter-in-law, Vicki Fassnacht, processed the company’s accounts until the early months of 1980.
 

 In the early part of 1979, the company began to experience some financial difficulties.
 
 [2]
 
 In March 1979, American National Bank extended a $100,000 loan to the company whose (1) gross sales at that time were less than 1.5 million dollars, and (2) staff consisted of less than twelve persons. Subsequent efforts to obtain another loan from commercial banks were unsuccessful. Eventually, the company debts were paid by checks which were not issued until the supplier demanded payment.
 

 In the summer of 1979, Appellee sought and received a $100,000 loan from her aunt, Bess Cason, who had rejected an earlier request to extend the loan directly to the company. In order to provide her aunt with some form of guaranty for the loan, Appellee executed a promissory note which made the monies due and payable within six months after her aunt’s death. The note was structured in such a way that Appellee’s debt could be offset against her
 
 *460
 
 inheritance if not fully paid prior to Cason’s death.
 

 Thereafter, Appellee loaned the monies to the company from which she took a promissory note as evidence of the debt. Her husband had intended to secure the company’s debt to his wife, as well as the debts to other family members, with a parcel of property on 13th Street in Chattanooga. However, the deeds erroneously described the property which was adjacent to the 13th Street property and owned by another company, C & E Enterprises.
 
 [3]
 

 In late 1979, John Fassnacht discovered the error within the deeds and brought them to the attention of his attorneys who supposedly corrected and recorded the instruments in an effort to secure the company’s obligations to the Appellee. During the early summer of 1980, John Fassnacht, while preparing the 13th Street property for sale to the Tennessee Valley Authority, discovered that the deed, which had ostensibly secured his wife’s $100,000 loan, had not been corrected. The deed was immediately corrected and recorded on June 19, 1980. The property was sold in September 1980, and the $100,000 obligation to the Appellee, as well as a $5000 secured debt to C & E Enterprises, was fully satisfied.
 

 II
 

 A trustee may void any transfer of property by the debtor to a creditor between ninety days and one year prior to the filing of the bankruptcy petition if the creditor was (1) an insider at the time of such transfer, and (2) had reasonable cause to believe that the debtor was insolvent at the time of the transfer. 11 U.S.C. § 547(b)(4)(B) (1980). There is no dispute that the Appellee, who was a director and an officer of the company, as well as the wife of the president, was an insider. However, the key legal question is whether she had reasonable cause to believe that A. Fassnacht and Sons, Inc. was insolvent at the time when her loan was fully satisfied. According to the preference statute, the time of transfer is when the corrected deed of trust was recorded. 11 U.S.C. § 547(e). Thus, on the basis of the record, June 19, 1980 is the crucial date. Moreover, the trustee must prove by a “preponderance of the evidence” that the creditor had reasonable cause to believe the debtor was insolvent.
 
 Green v. A.G. Edwards & Sons, Inc.,
 
 582 F.2d 439, 442 (8th Cir.1978).
 

 Initially, we must identify the appropriate standard of review for the issues in this cause. The Eighth and Ninth Circuit Courts of Appeal have used the “clearly erroneous” standard in reviewing the decision of the lower courts regarding whether a creditor had reasonable cause to believe that the debtor was insolvent.
 
 See e.g. Green,
 
 582 F.2d at 442 (8th Cir.1978);
 
 Los Angeles v. Quittner,
 
 176 F.2d 997 (9th Cir.1949). Indeed, most cases have employed this standard.
 
 See
 
 3
 
 Collier’s on Bankruptcy,
 
 ¶ 60.54 at 1072 n. 4 (1976). These cases appear to treat a ruling on this issue as a finding of fact on which the Court of Appeals must defer to the trial court. The only Sixth Circuit Court of Appeals cases in this area are more than fifty years old and involve a slightly different version of the statute. Nevertheless, this Circuit has held that the findings of a bankruptcy court shall not be disturbed unless there is “plain error.”
 
 Manufacturer’s Acceptance Corp. v. Hale,
 
 65 F.2d 76, 77 (6th Cir.1933);
 
 Buchanan State Bank v. DeGroot,
 
 39 F.2d 397, 398 (6th Cir.1930).
 

 However, some significant decisions in the Second and Fifth Circuit Courts of Appeal suggest that the simple application of the clearly erroneous standard may not be appropriate in certain limited situations. These Circuits have held that when the facts are largely undisputed, the inferences from the facts or an application of law to the facts is an area where appellate courts can engage in broad review.
 
 See e.g. Bernstein v. South Central Bell Telephone Co.,
 
 730 F.2d 987, 990 (5th Cir.1984),
 
 citing, Mayo v. Pioneer Bank & Trust Co.,
 
 297 F.2d 392, 395 (5th Cir.1961) (Wisdom,
 
 *461
 
 J.);
 
 In re Hygrade Envelope Corp.,
 
 366 F.2d 584 (2d Cir.1966) (Friendly, J.).
 

 Nevertheless, we need not attempt to reconcile any conflict that may exist between the circuits or decide whether to modify the “plain error” rule which this Circuit has employed in the past. Instead, we note that our decision to affirm the lower court would be the same without regard to which standard is employed. Here, the trustee has not demonstrated any substantive errors in the decision of the district judge who adopted the findings of fact, as well as the conclusions of law, of the Bankruptcy Judge.
 

 In
 
 Cissell v. First National Bank of Cincinnati,
 
 476 F.Supp. 474, 484 (S.D.Ohio 1979), the district court gave an excellent explanation of what the trustee must prove in order to show that the creditor had reasonable cause to believe that the debtor was insolvent:
 

 Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor’s notice, respecting the affairs and pecuniary condition of the debtor, as would lend a prudent business person to the conclusion that the debtor is insolvent. Of course, a creditor may not willfully close his eyes that he might remain in ignorance of his debtor’s condition. On the contrary, where circumstances are such as would incite a man of ordinary prudence to make inquiry, the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. In such a case, an inquiry of the debtor alone is generally insufficient, where his answer, under the circumstances, could readily have been found to be untrue. As a matter of fact, it is the creditor’s cause for belief and not the debtor’s knowledge, or lack of it, that is important. And if a creditor fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge that he would have acquired had he conducted such an investigation (3 Collier on Bankruptcy (Part 2) ¶ 60.53[1] (1977) (footnotes omitted).
 
 (See also In re Hygrade Envelope Corp.,
 
 366 F.2d 584, 586-90 (2d Cir.1966) (Friendly, J.)).
 

 Cissell
 
 is helpful, in that it establishes the necessity of a three step analysis which should be adopted by the trial courts. First, the court must determine whether circumstances exist that would lead an ordinarily prudent business person to make an inquiry. Second, where such circumstances exist and the creditor has failed to make any inquiry, the court must impute to the creditor that knowledge which he would have acquired had a “reasonably diligent” inquiry been made.
 
 Mack v. Bank of Lansing,
 
 396 F.Supp. 935, 942 (W.D.Mich.1975). Third, if the imputed knowledge would have given the creditor reasonable cause to believe that the debtor was insolvent, the court should allow the trustee to void the preferential treatment which had been received by the creditor.
 

 In the instant cause, the bankruptcy judge followed this analysis perfectly. With regard to the first step, he explicitly ruled that “[o]bviously the company’s problems were sufficient to put John and Suzanne Fassnacht on inquiry as to the company’s solvency before or at the time of the transfer.”
 
 [4]
 
 There can be little doubt as to the correctness of this view. Moreover, neither party challenges it on this appeal.
 

 The remaining question is whether John Fassnacht or the Appellee would have had reasonable cause to believe the company was insolvent upon making an inquiry. Bankruptcy Judge Ralph H. Kelley opined:
 

 The facts required John or Suzanne Fass-nacht to make a reasonable inquiry into the company’s financial condition. If the company was insolvent in June, 1980, it could have only been discovered by an inquiry far beyond the reasonable inquiry that was required. The Fass-nachts were not hiding their eyes from facts clearly showing insolvency. What
 
 *462
 
 they saw were facts showing financial problems but not insolvency, and if they had made a reasonable inquiry, they would not have discovered the company to be insolvent.
 
 [5]
 

 Thus, the bankruptcy judge found that such information would not have given them reasonable cause to believe that the company was insolvent. The record supports this conclusion.
 

 The test of insolvency in this context is the balance sheet standard; namely, whether the company’s liabilities exceeded its assets.
 
 See e.g.
 
 3
 
 Collier on Bankruptcy,
 
 ¶ 60.52 at 1055 (1976). Even though the company (1) was not paying all of its debts and (2) had net operating losses, these facts — standing alone — would not indicate insolvency as long as the company assets were greater than its liabilities. All of the information that the Appellee and her husband could have had in June 1980 reflected solvency. For example, the 1979 financial statement recorded a $34,000 loss and showed a $129,000 net worth. The May 1980 trial balance reflected a loss of $8,700 in 1980 and a net worth of $120,000. The June 1980 trial balance also showed a net worth of $111,000. No one — including the company’s accountant, Charles Strain — expected the business to fail. In fact, the focus of the directors’ attention during the annual meeting in June 1980 was upon the development of methods with which to increase the sales productivity.
 

 Appellant has raised four primary issues on appeal. First, he argues that the Appellee and her husband are chargeable with actual knowledge of the company’s financial condition as a matter of law. This assertion is incorrect. The relationship between the Appellee and the company does not justify such an inference. This is especially true because the record from the Bankruptcy Court indicates that the Appellee and her husband were surprisingly uninvolved in the day to day operations of A. Fassnacht and Sons, Inc.
 
 [6]
 

 In support of his position, the Appellant relies on several cases, all of which are distinguishable from the instant cause. For example, in
 
 In re St. Paul Garage Co.,
 
 22 F.Supp. 32 (D.C.Md.1937), the court found that the creditor had reasonable cause to believe that the debtor-company was insolvent because he was an experienced banker who should have known that the book valuation was faulty. In
 
 In re Arrowhead Gardens, Inc.,
 
 32 B.R. 296, 301 (Bk.Mass.1983), the court specifically made the factual finding that the creditor “actively managed and oversaw all debtor’s financial transactions during the relevant period.” On the basis of those facts, the court concluded that the creditor had reasonable cause to believe that the debtor was insolvent. The court made no imputation as a matter of law.
 

 In contrast, the facts here do not indicate such a special knowledge. In fact, the record in this case indicates that neither John Fassnacht nor his wife had more than a minimal (1) involvement in the operation of the business or (2) knowledge relating to the finances of the company. Thus, neither of them could be said to have had knowledge of the company’s actual fiscal condition and/or its then imminent state of insolvency. The other cases, which have been relied on by the Appellant, do not involve this bankruptcy provision.
 
 See e.g.
 
 Appellant’s Brief at 16-17,
 
 citing, Wiggington v. Auburn Wagon Co.,
 
 33 F.2d 496 (4th Cir.1929);
 
 In re Silvernail Co.,
 
 218 F. 979 (D.Kan.1914).
 

 Appellant also seeks to impute John Fassnacht’s “knowledge” of the company’s insolvency to the Appellee. The major flaw in this argument is that he has failed to establish that John Fassnacht had reasonable cause to believe that the company was insolvent. The second flaw is that one cannot assume that — in the absence of additional documentation — a creditor has reasonable cause to believe that a debtor is insolvent because her spouse possesses such a reasonable cause.
 
 See e.g. Matter of Citizens Loan & Savings Co.,
 
 621 F.2d 911, 914 (8th Cir.1980);
 
 Carroll v. Holliman,
 
 336 F.2d 425 (10th Cir.1964).
 

 
 *463
 
 Appellant also relies on
 
 In re Frigitemp,
 
 34 B.R. 1000 (S.D.N.Y.1983),
 
 aff'd,
 
 753 F.2d 230 (2nd Cir.1985). This case is also inap-posite. In
 
 Frigitemp,
 
 the court only concluded that a creditor had reasonable cause to believe the debtor to be insolvent because he, as a lawyer with significant legal and financial sophistication, was very involved with the company’s affairs. These facts are in stark contrast with the situation here.
 

 Appellant’s second argument is that the district court erred in assessing what a reasonable inquiry by the Appellee and John Fassnacht would have revealed. In essence, the Appellant contends that the Appellee had a duty to conduct an independent assessment of the inventory prior to altering the recording of the deed on June 19, 1980. Imposing such a duty would amount to the imposition of an extraordinary duty of inquiry — far beyond the "reasonably diligent” standard which now governs the conduct of a creditor.
 

 A reasonably diligent inquiry must be capable of producing facts that are essential to a determination of insolvency.
 
 Reese v. Akai America, Ltd.,
 
 19 B.R. 83, 85 (D.C.Fla.1982). Here, the bankruptcy judge took into account all of the financial statements, as well as the prior experiences of A. Fassnacht and Sons, Inc. There was simply no reason for the Appellee and/or her husband to have assumed that the financial statements were incorrect.
 

 Moreover, the Appellant’s contention that the Appellee should have undertaken an independent assessment is an improper post-hoc evaluation. The standard for determining when a creditor has reasonable cause to believe that a debtor is insolvent cannot be based on “the hindsight of later events. Due regard must be had for what is common business practice. The standards of the ‘prudent business person’ should not be unrealistic.”
 
 Los Angeles v. Quittner,
 
 176 F.2d at 999.
 

 Third, the Appellant argues that he was not given an opportunity to produce evidence which would have shown that the Appellee and her husband had reasonable cause to believe that the company was insolvent. This contention is without merit. The proceedings before the bankruptcy judge clearly indicate that he was given a full opportunity to introduce evidence in his position but declined to do so.
 
 [7]
 

 Finally, the Appellant argues that the common law rules regarding transfers prohibit an insolvent company from giving preference to a director, such as the Appel-lee. This rule only applies where the company has knowledge of insolvency or pending insolvency.
 
 See
 
 19 C.J.S.
 
 Corporations
 
 § 1391 at 1109 (“superior knowledge”). The case of
 
 Bean v. Commercial Securities Co.,
 
 25 Tenn.App. 254, 156 S.W.2d 338, 346 (1941) involves such knowledge.
 
 See also Burroughs v. Fields,
 
 546 F.2d 215, 217 (7th Cir.1976);
 
 Southern Industries, Inc. v. Jeremias,
 
 66 A.D.2d 178, 411 N.Y.S.2d 945 (1978). Here, since there is no evidence that the Appellee or John Fass-nacht had any knowledge that insolvency was imminent, one cannot say that the transfer was executed in bad faith or in violation of any trust relationships which may have existed.
 

 For the reasons stated, the district court is AFFIRMED.
 

 [1]
 

 . The parties agree that 11 U.S.C. § 547(b), as it existed in 1980, is applicable here. Although several of the cases which have been cited herein involve earlier versions of 11 U.S.C. § 547, they are apposite to the instant cause because the key portion of the earlier statute was substantively the same.
 

 [2]
 

 . Joint Appendix at 23-26.
 

 [3]
 

 . C & E Enterprises was also owned by John Fassnacht, his brothers, sisters, and their respective spouses.
 

 [4]
 

 . Joint Appendix at 28.
 

 [5]
 

 . Joint Appendix at 33.
 

 [6]
 

 .
 
 See e.g.
 
 Joint Appendix at 30.
 

 [7]
 

 .
 
 See
 
 brief of Appellee at 23-24.