**EDWARDS & DEUTSCH LITHOGRAPH-ING COMPANY, Appellant,**

v.

**Robert B. ROTTMAN, Trustee in Bankruptcy, Appellee.**

**No. 9851.**

United States Court of Appeals Tenth Circuit.

Aug. 15, 1968.

David J. Clarke, Denver, Colo. (Samuel J. Frazin, Denver, Colo., on the brief), for appellant.

John H. Schultz, Denver, Colo., for appellee.

Before LEWIS, Circuit Judge, WILBUR K. MILLER, Senior Circuit Judge,[*] and SETH, Circuit Judge.

WILBUR K. MILLER, Senior Circuit Judge:

Pioneer Savings Stamps, Inc. of Colorado was engaged in the trading stamp business until it was adjudicated a bankrupt on November 18, 1965. Edwards & Deutsch Lithographing Company of Chicago, which had printed stamp redemption catalogues for Pioneer, filed a claim for $53,031.94 based on a judgment. The Trustee in Bankruptcy filed an objection to the claim and a petition to avoid a preference. He alleged that, within the four-month period preceding bankruptcy and while it was insolvent, Pioneer had paid to claimant on an antecedent unsecured debt $8,150.67 on August 11 and $8,167.88 on September 7, 1965, and that such payments constituted voidable preferences.

The Referee conducted an evidentiary hearing, after which he made extensive

---

[*] Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

findings of fact and reached conclusions of law. He found the two transfers attacked by the Trustee were made within four months of bankruptcy on an antecedent debt and while Pioneer was insolvent. The Referee further found that when the transfers were made the claimant had reasonable cause to believe Pioneer was insolvent. Hence he allowed the claim of Edwards & Deutsch in full, provided that within 30 days it pay to the Trustee the sum of $16,318.55. If such payment were not made, the entire claim would be disallowed and judgment for $16,318.55 against the claimant would be awarded to the Trustee. On petition for review, the District Court upheld the Referee's decision and the claimant took this appeal.

The parties agree that the only issue is whether the Trustee sustained the burden of proving by a preponderance of the evidence that Edwards & Deutsch or its agent acting with reference thereto had, when the two transfers were made, reasonable cause to believe Pioneer was insolvent. This issue was presented to the Referee and his affirmative answer to the question is binding on us unless it is clearly erroneous; that is, unless on the entire evidence we are left with the definite and firm conviction that a mistake has been made. The question for us is whether the Referee's findings were clearly erroneous under that standard. Eureka-Carlisle Company v. Rottman, 10 Cir., 398 F.2d 1015.

We there set forth criteria established by the courts for determining whether a creditor to whom a preferential transfer has been made had reasonable cause to believe his debtor was insolvent at the time of transfer. In addition to the authorities cited in that opinion, we quote and approve the following statement of District Judge Bartels in In re Cichanowicz, 247 F.Supp. 975, 977–978 (E.D. N.Y.1965):[1]

"* * * Cases involving reasonable cause to believe present a variety of different circumstances, each case being dependent upon the totality of circumstances as disclosed by its own facts. In a case of this type it is not sufficient that the Court, if it were the trier of the facts, might have reached a different conclusion. The 'clearly erroneous' rule applies not only to basic facts but also to differing inferences which may be drawn from those facts. Lamont v. Commissioner of Internal Revenue, 2 Cir., 1964, 339 F.2d 377, 381. The Referee had the opportunity, as the trier of the facts, to hear and observe the witnesses, to appraise their credibility and to determine which is the more reasonable inference to draw from the circumstances. In re Cox, [7 Cir. 1943, 132 F.2d 881]. While speculation cannot be substituted for proof, the findings and conclusions of the trier must be accepted unless the Court has a firm conviction that a mistake has been committed. * * *"

In the light of these principles, we have carefully examined the evidence as a whole to see whether it supports the findings of the Referee and whether it, together with proper inferences therefrom, justified the legal conclusions reached. We think it unnecessary to detail the findings of fact which, as we have said, were extensive; a brief summary of some of the evidence will suffice to show there was support for the findings. The record reveals that on or about September 8, 1964, Pioneer contracted to purchase 300,000 catalogues from Edwards & Deutsch for $129,000 payable in three instalments on October 1, 1964, and January 1 and March 31, 1965. The account was in arrears practically from its inception; on March 31, when it should have been paid in full, there was an unpaid balance of $83,623.-99. In February, 1965, Bruno Weglarz, Controller of the Lithographing Company who acted as its agent throughout, began attempts to obtain Pioneer's cog-

---

1. Affirmed from the bench by the Second Circuit for the reasons given by Judge Bartels. 353 F.2d 538 (1965).

novit notes to cover the account. His efforts were frustrated by Pioneer until March 24 when its president went to Chicago and told Weglarz Pioneer was having trouble meeting its obligations, but that he would have it execute a series of ten cognovit notes furnished to him by Weglarz. He did not return the cognovit notes but, nearly a month later, sent Weglarz one promissory note to cover the amount. As it did not contain a cognovit clause, Weglarz refused to accept it, but in April traveled to Denver and finally obtained the cognovit notes he insisted upon having. On or about July 15, 1965, Weglarz refused to ship any more catalogues to Pioneer without the express consent of the president of his company.

After receiving from Pioneer the preferential payments of August 11 and September 7, Edwards & Deutsch reduced the remainder of the notes to judgment shortly before bankruptcy. We think it significant that Weglarz was so alarmed about Pioneer's account that, as early as February, 1965, he demanded cognovit notes so his company could at any time obtain judgment without delay. And we think it particularly significant, as indicating Weglarz's failure to make adequate inquiry, that he did not at any time obtain a financial statement from Pioneer. Such a statement, which revealed insolvency as of March 31, 1965, was prepared in June, 1965, and was available thereafter. Weglarz was interested only in obtaining the cognovit notes and payments thereon; he made no effective effort to get information as to Pioneer's financial condition. For example, while he was in Denver he was "quite impressed" with Pioneer's stamp redemption store; but he did not learn that some of the merchandise in it did not belong to Pioneer.

In announcing his decision at the conclusion of the evidence the Referee, Honorable Benjamin C. Hilliard, Jr., said *inter alia*: "In all of the preference cases, over all the years I've been on this Bench [since June 1, 1953], I've heard very few that had more flagrant circum-stances, or flags * * *." We agree that the evidence and justifiable inferences from it warranted the Referee in concluding that Weglarz had knowledge of facts which would incite a person of reasonable prudence to make inquiry, and that inquiry would have led to the development of facts giving a reasonably prudent man reasonable cause to believe the debtor was insolvent. Our review of the evidence does not leave us with a definite and firm conviction that the Referee made a mistake; on the contrary, we are convinced that his decision was correct. Accordingly, we uphold the District Court judgment which confirmed the Referee's decision.

Affirmed.