In the Matter of Johnnie HADAD and Marguerite Thomas Hadad.

Nos. 1888, 1889.

United States District Court, S. D. Mississippi, W. D.

March 9, 1970.

David W. Ellis, Vicksburg, Miss., for the bankrupts.

Frank M. Youngblood, N. Sidney Harper, Jackson, Miss., for trustee in bankruptcy.

Lucius B. Dabney, Jr., Vicksburg, Miss., for Federal Employees Mutual Credit Union.

NIXON, District Judge.

This case is before the Court to review an Order entered by the Referee in Bankruptcy on August 27, 1969 allowing Frank M. Youngblood, Trustee in Bankruptcy, to maintain possession of the subject property herein.

A petition for review was filed by Mutual Credit Union with the Referee on September 6, 1969, in accordance with Section 39c of the Bankruptcy Act and the Referee has transmitted to this Court all materials required by Section 39a(8) of the Bankruptcy Act. This Court has jurisdiction to "consider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings." Section 2a(10) of the Bankruptcy Act. General Order 47 requires that "unless otherwise directed in the order of reference the report of a referee . . . shall set

forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

Johnnie Hadad, the bankrupt herein filed an application for a loan of $3,907.50 with Mutual Credit Union on April 25, 1968. This loan was to be paid over a period of thirty-six months in equal monthly installments of $126.00 each. The loan application listed as collateral: automobile at $2,225.00; furniture at $183.00; real estate at -0-; shares on deposit at -0-; and other; designated as "sig. and wife's sig." at $1,500.00, showing a total of $3,907.50. The loan application further indicated that the total indebtedness and liabilities of the bankrupt did not exceed $4,000.00 and listed tangible assets at $2,408.00. This application was approved by the Credit Committee on April 26, 1968.

On April 26, 1968 Johnnie Hadad executed a promissory note in the amount of $3,907.50 payable to Mutual Credit Union, said note being payable in thirty-six equal monthly installments of $126.00 each, beginning June 5, 1968. On this same date, Mutual Credit Union issued a check in the amount of $250.00 payable to Johnnie Hadad and consolidated two prior loans reflecting balances of $2,943.80 and $713.70, thereby establishing a new balance of $3,907.50 for which the new note was written. The two prior loans were thus paid off by refinancing the note.

On April 26, 1968, Johnnie Hadad executed a Uniform Commercial Code Security Agreement and Uniform Commercial Code Financing Statement, UCC I-Form, covering a 1957 Chevrolet, 4-door Sedan, and a 1967 Chevrolet SS, 2-door hardtop, the subject automobile herein and purchased by Johnnie Hadad sometime in 1967. Mutual Credit Union had financed the subject automobile originally in 1967 as reflected by the $2,943.80 balance paid off by the new note executed on April 26, 1968.

Johnnie Hadad began making monthly installment payments of $126.00 and continued these payments until January 1969. By February 5, 1969, there had been no payments for two months and Rudolph Dill, Manager of Mutual Credit Union, reviewed the account of the bankrupts to determine the action to be taken on the delinquent account. In reviewing the account, Dill discovered that the UCC Financing Statement had not been recorded and immediately filed the same with the office of the Warren County Chancery Clerk on February 11, 1969.

On February 24, 1969, the voluntary debtors' petition in bankruptcy was filed herein. The possession of the subject automobile remained in the bankrupts until turned over to Frank M. Youngblood, Trustee in Bankruptcy, following the first meeting of creditors in this cause.

On August 27, 1969, the Referee in Bankruptcy entered an order declaring the recordation of the security instrument by Mutual Credit Union to have been a preferential transfer and voidable as against the Trustee in Bankruptcy. Before examining the elements necessary to constitute a preferential transfer under Section 60 of the Bankruptcy Act, this Court must look briefly to the Trustee's reliance on Section 70c of the Bankruptcy Act as support for his position that the delayed recordation did not perfect the creditor's lien as against the Trustee.

The construction of 70c urged by the Trustee is primarily the same as enunciated by the court in *Constance v. Harvey,* 215 F.2d 571 (C.A. 2, 1954) which held that the Trustee was entitled under 70c to assert the lien of a hypothetical creditor who had extended credit before the perfection of the security interest. Although this interpretation was subsequently adopted by numerous jurisdictions, the doctrine of *Constance v. Harvey, supra,* was specifically rejected by the Supreme Court in *Lewis v. Manufacturers National Bank of Detroit,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), the Court stating:

"We think that one consistent theory underlies the several versions of § 70c

which we have set forth, *viz.,* that the rights of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of 'the date of bankruptcy', not at an anterior point of time. That is to say, the trustee acquires the status of a creditor as of the time when the petition in bankruptcy is filed. We read the statutory words 'the rights . . . of a creditor [existing or hypothetical] then holding a lien' to refer to that date. This construction seems to us to fit the scheme of the Act. Section 70e enables the trustee to set aside fraudulent transfers which creditors having provable claims could void. The construction of § 70c which petition urges would give the trustee power to set aside transactions, which no creditor could void and which injured no creditor. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy."

Thus Mutual Credit Union is correct in its assertion that the hypothetical lien granted the Trustee under Section 70c arises *on the date of bankruptcy.* (Emphasis added)

The Uniform Commercial Code became effective in the State of Mississippi on March 31, 1968, prior to the April 26, 1968 execution of the UCC Security Agreement and Financing Statement covering the security under consideration herein. Thus, the following treatment in Colliers on Bankruptcy, Section 70.51[1], page 614, adequately sets forth the law in this area.

"Section 70c now specifies that the trustee's lien is deemed vested as of the date of bankruptcy with respect to all property within the scope of its terms . . . . Since the time when liens attach governs their relative priority in the absence of explicit enactment to the contrary, the date upon which the bankruptcy trustee's lien arises under § 70c is of crucial importance.

Generally speaking, liens properly perfected as against levying creditors prior to the date of bankruptcy (the filing of the petition) will be superior to that of the trustee under § 70c; those not so perfected or perfected subsequent to bankruptcy will be subordinate thereto. It must be constantly borne in mind, however, that this is a matter upon which § 70c normally defers to state law. Consequently, the trustee's lien will have whatever standing the local law would impart to a lien which had been perfected at the date of bankruptcy by a creditor of the bankrupt through legal or equitable proceedings; and in order to determine whether the trustee's lien will prevail, it is to such a hypothetical case that the court must refer. Thus an unrecorded conditional sale that is made invalid by the local law as to creditors of the vendee who fasten a lien by legal or equitable process upon the property involved before record of the sale is filed, will generally be invalid against the trustee under § 70c where the contract is not filed or recorded before bankruptcy. Under a similar law, the same results would be achieved with respect to an unrecorded chattel mortgage. On the other hand, if properly recorded prior to bankruptcy, even though not immediately upon the date the transaction was effected, such a sale or mortgage will usually prevail against the trustee under § 70c. Since the Uniform Commercial Code has been adopted in all jurisdictions except Louisiana, it is well to note that the same is true under it. An unperfected security interest is subordinate, by virtue of § 9–301(1)(b), to a creditor who obtains a lien by legal or equitable proceedings before the security interest is perfected. Such a levying creditor would not prevail if his lien attaches after the security interest has been perfected, no matter how late; thus, if a security interest is perfected before bankruptcy the trustee cannot invalidate it under § 70c; if it is not then perfected, it may be so invalidated by the trustee.

. . . Although mere delay in perfecting a security transaction does not ordinarily enable the trustee as a lien creditor under § 70c to prevail over the security interest perfected before the debtor's bankruptcy, the trustee may be able to take advantage of the delay by showing that the result was a preferential transaction within § 60, a fraudulent transfer within § 67d or § 70e or a transaction otherwise voidable under § 70e. (Footnotes omitted)

Under 70e(1), the Trustee is not restricted to the time of filing limitation imposed by 70(c) but his rights are dependent, however, upon the rights of any existing unsecured creditor. The Trustee alleges that numerous unsecured creditors did come into existence between the time of execution of the Financing Statement on April 26, 1968, and its subsequent recordation on Feb. 24, 1969.

Section 9–201 of the UCC provides: "Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

As Article 9 nowhere "otherwise provides" with respect to general, unsecured creditors, a security agreement is effective against unsecured creditors even though the security interest created thereby is unperfected. An unsecured creditor may not invalidate a security interest under 70e even though it was unperfected at some time before bankruptcy. See Colliers on Bankruptcy, § 70.81, pp. 938, 939, 940. If unperfected as of the date of bankruptcy, the interest may be avoided under § 70c.

The right of the Trustee to proceed under § 60(a)(b) can operate quite independently, however, of his rights under 70c or 70e(1). The Referee determined that all of the necessary elements were present in order to constitute a voidable preference under § 60(a)(b). These elements are set forth in *Modern Bankruptcy Manual,* Vol. 2, Section 1057, at page 785, as follows:

". . . It may be said that the elements of a voidable preference are a transfer of property of the debtor to a creditor on account of antecedent indebtedness at a time when the debtor was insolvent with the filing of a petition in bankruptcy ensuing within 4 months, the transfer resulting in the diminution of the bankrupt's estate and in an advantage obtained by the creditor over other creditors of the same class on which would result in such an advantage were the transfer allowed to stand, coupled with acceptance of the transfer by the creditor notwithstanding reasonable cause on his part to believe the debtor to be insolvent."

It is clear that the delayed perfection of the UCC Financing Statement on February 11, 1969, rendered the debt antecedent, the transaction actually occurring, for purposes of Section 60 consideration, on the date of recordation. § 60a(2); Colliers on Bankruptcy, Section 60.19, at page 847, Section 60.36, at page 912; Modern Bankruptcy Manual, supra, at page 792. The transfer occurred while the debtor was insolvent, the debtors' bankruptcy petition reflecting liabilities on Feb. 11, 1969 of over $19,000.00 and assets of approximately $100. (Schedules A–2, A–3, Summary of Assets and Liabilities). The transfer was well within the four month requirement of Section 60, the debtors filing their voluntary petition in bankruptcy on February 24, 1969. Finally it seems undisputed that the transfer represented a diminution in the bankrupts' estate and a preferential advantage over other unsecured creditors of the bankrupts equal to the value of the subject automobile. In fact, the only essential element actually disputed is whether or not Mutual Credit Union had reasonable cause to believe that the debtor was insolvent at the time of transfer.

The Referee determined that Rudolph Dill, Manager of Mutual Credit Union, did have reasonable cause to believe that the bankrupts were insolvent on February 11, 1969, and acted to per-

fect the unrecorded lien on the subject automobile for the benefit and to the advantage of Mutual Credit Union. This Court is of the opinion that this factual determination by the Referee is not "clearly erroneous" as required by General Order 47. The record reveals that the bankrupts were two months behind in their payments to Mutual Credit Union at the time Mr. Dill ascertained that the Financing Statement had not been recorded. In fact, Dill admitted that if the lien had not gone delinquent he would not have discovered that the instrument had not been filed (Tr. 15).

Actual knowledge of insolvency is not required. As noted in Collier on Bankruptcy, Section 60.53[1], at pages 1057–1065:

"Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that a debtor was insolvent at the time of the preferential transfer. A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent. Of course, a creditor may not wilfully close his eyes that he might remain in ignorance of his debtor's condition. On the contrary, where circumstances are such as would incite a man of ordinary prudence to make inquiry, the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. In such case, an inquiry of the debtor alone is generally insufficient, where his answer, under the circumstances, could readily have been found to be untrue. As a matter of fact, it is the creditor's cause for belief and not the debtor's knowledge, or lack of it, that is important. And if the creditor fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge which he would have acquired had he conducted such an investigation." (Footnotes omitted)

Although Dill stated he had no reason to believe the bankrupts were insolvent at the time of recordation, and Mutual Credit Union experienced about ninety to one hundred delinquencies each month, the state of facts were such that Dill, as a prudent business person, should have had reasonable cause to believe that the debtor was insolvent at the time of perfecting the security interest. Certainly a reasonably diligent inquiry, which was warranted under the circumstances, would have disclosed the fact that the bankrupts were over $19,000 in debt.

This Court is of the opinion and finds that Referee's Order declaring the delayed recordation of the security instrument by Federal Mutual Credit Union to have been a preferential transfer and thus voidable as against the Trustee was not clearly erroneous and the Order is hereby affirmed.

The Trustee shall present his Order in conformance with the foregoing opinion to the Court within the time and in the manner prescribed by the Rules of this Court.