In re GRUBER BOTTLING WORKS, INC., Debtor.

Catherine MARGRAFF, Plaintiff,

v.

GRUBER BOTTLING WORKS, INC. and Harry B. Altenberg, Trustee, Defendants,

and

Fred S. James & Co., Inc. of Pennsylvania and Leone Industries, Inc., Intervenor-Defendants.

Bankruptcy No. 80–00245K.
Adv. No. 81–0050K.

United States Bankruptcy Court, E. D. Pennsylvania.

Jan. 5, 1982.

Leonard J. Cook, Philadelphia, Pa., for debtor.

James M. Matour, Robert A. Kargen, Philadelphia, Pa., for plaintiff Catherine Margraff.

Harry Altenberg, Philadelphia, Pa., Trustee.

William M. Shields, Philadelphia, Pa., for defendant Leone Industries.

Vito F. Canuso, Jr., James J. O'Connell, Philadelphia, Pa., for Trustee.

R. Leonard Davis, III, Philadelphia, Pa., for Trustee and defendant Fred S. James & Co.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on a complaint for relief from the automatic stay filed by Catherine Margraff as a secured creditor of the debtor who has filed a petition for relief under Chapter 7 of the Bankruptcy Code. Two (2) unsecured creditors intervened in the action and were granted permission to proceed on behalf of the Trustee as Special Counsel. In defense to the claim of the plaintiff, the Trustee asserted that the transfer of a security interest to Mrs. Margraff was a preference which could be avoided under the Bankruptcy Code. The Court, however, finds in favor of the plaintiff.[1]

Gruber Bottling Works is a small closely held corporation. The business has been owned and operated by the Gruber family for several generations. The Company was founded by Mrs. Margraff's grandfather.

1. This Opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.

Control passed to her father and, later, to her brother, John F. Gruber. When her brother passed away, management devolved upon his sons, John G. Gruber and Edward Gruber.

In March of 1979, plaintiff was approached by her son, John E. Margraff, to loan money to Gruber Bottling Works.[2] Although neither she nor her son were shareholders, John Margraff was involved with the current management of the debtor.[3] Mrs. Margraff agreed to provide the loan. She pledged a certificate of deposit to East Girard Savings Association which advanced funds in the amount of $18,000. John Margraff disbursed these funds to the corporation. He also advanced some of his own funds. The plaintiff's son also kept records of the disbursements and of the interest owed to his mother.

In September of 1979, the debtor and the plaintiff entered into a security agreement whereby the company granted Mrs. Margraff a security interest in all of their machinery and equipment and proceeds thereof. The security interest was perfected by the filing of the appropriate financing statements. This granting of the security interest is attacked by the Trustee as an alleged preferential transfer.

The petition for relief under the Bankruptcy Code was filed on February 4, 1980. The Trustee, who was duly appointed in the Chapter 7 case, liquidated the assets and placed the funds in a deposit account. Plaintiff filed her complaint under § 362 to enforce her security interest against this fund. Hearing on the matter was duly held

on August 19, 1981. At the trial, the intervening creditors raised the defense that the grant of the security interest to the plaintiff was a preference which should be avoided under § 547 of the Bankruptcy Code.

■ Section 547(b) of the Code presents five (5) criteria which are to be applied to a transfer of property of the debtor, and provides that the trustee may avoid any transfer of property of the debtor which satisfies all five criteria.[4] The criteria are: (1) the transfer must have been to or for the benefit of a creditor, (2) for or on account of an antecedent debt, (3) made while the debtor was insolvent, (4) on ninety days before the date of the filing of the petition; or within one year before the date of the filing if the creditor was an insider at the time of the transfer and had reasonable cause to believe that the debtor was insolvent, and (5) which enabled the creditor to receive more than he would have received under the distribution provisions of the Code.[5]

■ In this case, the granting of the security interest and the subsequent perfection thereof constitutes the transfer which is allegedly voidable under § 547(b). The grant of a security interest by a debtor is a "transfer" within the definition of § 101(40) and § 547(b). *Matter of Vecco Construction Industries*, 9 B.R. 866 (Bkrtcy.,E.D.Va.1981); *In re American Lumber Co.*, 7 B.R. 519 (Bkrtcy.,D.Minn. 1979). There is no question that the transfer in this case was on account of the ante-

---

**2.** Mrs. Margraff, the plaintiff, is a 75 year old widow who is not employed.

**3.** John Margraff chaired business meetings and served as an impartial adviser to the management. He was never a shareholder or an employee of the debtor, nor did he ever receive any payment for his services.

**4.** Section 547(c) sets forth six specified transfers which the trustee may not avoid. None of these exceptions are applicable to the present situation.

**5.** In *In re Kelley*, 3 B.R. 651 (Bkrtcy.E.D.Tenn. 1980), the court stated that all of these elements must be present before a transfer may

be found to be preferential. *See Gentry v. Twin City Glass Inc.*, 358 F.Supp. 1022 (W.D. La.1973); *In re National Buy-Rite, Inc.*, 7 B.R. 407, 409 (Bkrtcy.,N.D.Ga.1980); *In re C. S. Measick & Co.*, 1 B.R. 599, 601 (Bkrtcy.,D. Conn.1979). In addition, the burden of proof to establish each of the elements in § 547(b) by a preponderance of the evidence rests with the trustee. *In re Denaburg*, 7 B.R. 274, 275 (Bkrtcy.,N.D.Ala.1980). *See also, American Nat'l Bank & Trust Co. v. Bone*, 333 F.2d 984, 987 (8th Cir. 1964); *Mizell v. Phillips*, 240 F.2d 738, 740 (5th Cir. 1957).

**352**

cedent debt created by plaintiff's loan to the debtor.[6]

Counsel for the plaintiff asserted that the debtor was not insolvent at the time of the transfer; and, thus, a crucial element of a preference was missing.[7] The debtor's balance sheets, however, showed that the company had a negative net worth for the year before the transfer. As this Court has stated in a recent case:

> . . . the trustee must establish the debtor's insolvency on the date the transfer was made. . . . Insolvency is determined by a "balance sheet" test. In other words a debtor is insolvent when his liabilities exceed his assets.

*In re Camp Rockhill, Inc.,* 12 B.R. 829 (Bkrtcy.,E.D.Pa.1981) at 833.[8] The debtor's balance sheet showed a negative equity and a continuous operation at a loss. The Court is satisfied that Gruber Bottling Works was indeed insolvent at the time of the transfer.

It is admitted that the plaintiff is an insider as defined under § 101(25) of the Code. She is a relative of an officer of the debtor.[9] Pursuant to § 101(25)(B)(VI), Mrs. Margraff is, therefore, a statutory insider. As a result of having such status, she is subject to the one year period for avoidance of transfers.[10] The transfer in this case was within this period.

The key issue, which the Court must decide, is whether or not the plaintiff had reasonable cause to believe the debtor was insolvent as required by the insider preference provision.[11] The Court finds that the defendants failed to establish that plaintiff had the requisite reasonable cause to believe that the debtor was insolvent at the time of the transfer.

The Trustee has failed to establish that the creditor had reasonable cause to believe the debtor was insolvent at the time of the transfer.[12] In determining whether a creditor had reasonable cause, several general propositions emerge from the cases and commentaries but each case, ultimately, must be decided on its own facts. *Harrison v. Merchants National Bank,* 124 F.2d at 873; *Engelkes v. Farmers Co-Operative Co.,* 194 F.Supp. 319 (N.D.Iowa 1961); *Dean v. Planters National Bank,* 176 F.Supp. 909, 913 (E.D.Ark.1959); 3 Collier on Bankruptcy ¶ 60.52 at p. 1055 (14th ed. 1976).

The Code requires neither actual knowledge of nor belief in the debtor's insolvency. All that is necessary is reasonable cause to believe the debtor is insolvent. However, it is important to note that mere suspicion of insolvency is not enough to charge the creditor with reasonable cause to believe the debtor is insolvent. *PRS Products,* 574 F.2d 414 (8th Cir. 1978). *See, also, Grant v. National Bank,* 97 U.S. 80, 81–83, 24 L.Ed. 971 (1877); *Green v. A. G. Edwards & Sons, Inc.,* 582 F.2d 439 (8th Cir. 1978); *Mayo v. Pioneer Bank & Trust Co.,* 297 F.2d 392, 394–95 (5th Cir. 1961); *Inter-State National Bank v. Luther,* 221 F.2d 382 at 392 (10th Cir. 1955); *Harrison,* 124 F.2d at 871; *Brown Shoe Co. v. Carns,* 65 F.2d 294, 297 (8th Cir.), *cert. denied,* 290 U.S. 695, 54 S.Ct. 130, 78 L.Ed. 598 (1933); *In re Hadad,* 409 F.Supp. 106, 110 (S.D.Miss. 1970); *Engelkes,* 194 F.Supp. at 319. Yet, it is adequate if a creditor has such knowledge or notice of such facts and circumstances as would incite a person of reasonable prudence under similar circumstances to make inquiry. If the inquiry would lead to

---

6. *See* 11 U.S.C. § 547(b)(1), (2).

7. *See* 11 U.S.C. § 547(b)(3) which requires that the debtor must be insolvent for the preference to be voidable.

8. *See,* also, *In re National Buy-Rite, Inc.,* 7 B.R. 407 (Bkrtcy.,N.D.Ga.1980); 4 Collier on Bankruptcy ¶ 547.26, p. 547–94 (15th ed. 1980).

9. *See* 11 U.S.C. § 101(34).

10. *See* 11 U.S.C. § 547(b)(4)(B).

11. *See* 11 U.S.C. § 547(b)(4)(B)(ii).

12. In *Kenneally v. First National Bank,* 400 F.2d 838 (8th Cir. 1969), the court held that the burden is on the bankruptcy trustee to prove by a preponderance of the evidence that the creditor had reasonable cause to believe the debtor was insolvent at the time of the transfer. *See, also, Farmers Bank v. Julian,* 383 F.2d 314 (8th Cir. 1967); *Harrison v. Merchants Nat. Bank,* 124 F.2d 871, 874 (8th Cir. 1942).

the development of facts essential to the knowledge of the situation, he will be charged with knowledge thereof. *Eureka-Carlisle Co. v. Rottman,* 398 F.2d 1015, 1018 (10th Cir. 1968); *Edwards & Deutsch Lithographing Co. v. Rottman,* 398 F.2d 1020, 1022 (10th Cir. 1968); *In re Hygrade Envelope Corp.,* 366 F.2d 584, 586–87 (2nd Cir. 1966); *Shaw v. U. S. Rubber Co.,* 361 F.2d 679, 682 (5th Cir. 1966); *American National Bank,* 333 F.2d at 987; *Marks v. Goodyear Rubber Sundries Inc.,* 238 F.2d 533, 534–35 (2nd Cir. 1956); *Interstate National Bank,* 221 F.2d at 392; *McDougal v. Central Union Conference Association of Seventh Day Adventists,* 110 F.2d 939, 941 (10th Cir. 1940).

Although Mrs. Margraff is a woman of advanced years, the Court found her to be a bright and credible witness on her own behalf. Nevertheless, she could not be expected to play an active role in managing a business or overseeing her financial affairs. She did not have an active role in investigating the financial state of the debtor during this period. Furthermore, a previous loan transaction, several years earlier, was effectuated without any problems.

Plaintiff testified that she never received nor was shown any financial statements, operating reports, or bank statements portraying the financial state of the debtor. In fact, she never received any records whatsoever pertaining to the debtor's financial health. Thus, Mrs. Margraff had no knowledge or factual information of the insolvency of the debtor or which would incite a person of reasonable prudence under similar circumstances to make an inquiry into the fiscal stability of the debtor.

Defendants, however, allege that the plaintiff's son was in possession of such knowledge. It is asserted that John Margraff became his mother's agent by virtue of his involvement in the loan process. As a result, defendants argue, his knowledge should be imputed to the plaintiff in accordance with the classic principles of agency law.[13]

The Court is not convinced that an agency relationship existed between John Margraff and his mother. Although he delivered the funds for her and also kept records of the loan transaction for her benefit, he was requested to approach her by an officer of the debtor corporation. The loan was not made at plaintiff's request. Instead, John Margraff arranged the loan for the benefit of Gruber Bottling Works. According to his own testimony, John Margraff served merely as a "conduit" through which the funds moved. It was understood from the beginning that the transaction between plaintiff and the debtor would be a secured loan. John Margraff's actions in regard to the perfection of the security interest were a culmination of the original terms of the loan and are not sufficient, in and of themselves, to create an agency relationship between him and his mother.

An essential element of the agency relationship is that the agent do something at the behest of and for the benefit of the principal. *Leary v. Johnson,* 159 Conn. 101, 267 A.2d 658 (1970). To create an agency relationship requires more than passive permission. The principal must retain the elements of request, instruction, and command. *Klee v. U. S.,* 53 F.2d 58 (9th Cir. 1931). Agency cannot be presumed merely because one party performs an act for another. *Reifsnyder et al v. Dougherty,* 301 Pa. 328, 152 A. 98 (1930); *Bross v. Varner,* 159 Pa.Super. 495, 48 A.2d 880 (Pa.Super.1946). In this case, John Margraff admittedly performed certain services for his mother. These actions, however, are not sufficient to create an agency relationship between them. There is no indication that the elements of instruction and command were reposed in Mrs. Margraff; or, at least, that none of these elements which could be attributed to anything other than the bonds of filial affection. Nor did John Margraff undertake to place this loan at his mother's request. The debtor approached him to arrange a loan similar to one which had occurred several years earlier.

**13.** See Second Restatement of Agency § 272.

The Court finds that, in the absence of any agency relationship, Mrs. Margraff had no reasonable cause to believe that the debtor was insolvent. As a result, the defendants cannot prove that there was an avoidable preference under § 547(b). The plaintiff, being secured in the proceeds of the sale of the machinery and equipment of the debtor, is entitled to relief from the stay. This being a chapter 7 proceedings, there is no reason for the Trustee to retain the funds resulting from the sale of the collateral. An Order will be entered granting judgment in favor of the plaintiff and directing the Trustee to pay $23,671.80 to Mrs. Margraff.