In re GAILEY, INC., Debtor.

Joseph J. BERNSTEIN,
Trustee, Plaintiff,

v.

Richard W. GAILEY, Billie J. Gailey,
and Universal Labs, Inc., Defendants.

Bankruptcy No. 85–0202.
Adv. No. 87–0386.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 1, 1990.

506

Neil Y. Siegel, Bernstein & Bernstein, P.C., Pittsburgh, Pa., for plaintiff Joseph J. Bernstein, Trustee.

Loraine Smith Tabakin, Tabakin, Carroll & Curtin, Pittsburgh, Pa., for defendant Billie Gailey.

Patrick M. Livingston, Mansmann, Cindrich & Titus, Pittsburgh, Pa., for defen-

dants Richard W. Gailey and Universal Labs, Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a complaint instituted by the trustee consisting of six (6) counts in which he seeks to recover the value of several allegedly improper transfers of debtor's property to and by the defendants.

Defendants deny that the trustee is entitled to recover the value of the transfers under any of the legal theories set forth in the complaint.

For reasons set forth below, judgment will be entered for the trustee and against Richard Gailey in the amount of $53,552.25, against Billie Gailey in the amount of $15,-444.26, and against Universal Labs, Inc., in the amount of $15,039.48.

### I.

#### *Amendment Of Theories Of Relief*

The trustee in effect moved, at the beginning of trial, to amend Counts IV and VI of the complaint as originally pleaded by changing the legal theory of recovery in those counts. Count IV originally sought to recover certain transfers to Universal Labs on the theory that they were preferential under the Bankruptcy Code (11 U.S.C. § 547(b)). Count VI originally stated a claim against Billie Gailey and Richard Gailey for "diversion of corporate funds". The trustee sought at trial to amend Counts IV and VI to seek recovery on the theory that the transfers in question were fraudulent under the Code (11 U.S.C. § 548(a)).

Defendants objected to the proposed amendments on the ground that they would be severely prejudiced if such amendment were permitted.

FED.R.CIV.P. 15(a), which applies to adversary proceedings, provides in relevant part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

■ Leave to amend one's pleadings "out of time" pursuant to Rule 15(a) rests in the sound discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Trial judges are "... somewhat like quarterbacks in that they have a broad range of options for their game plan". *Heyl & Patterson International v. F.D. Rich Housing*, 663 F.2d 419, 426 (3rd Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

■ Leave to amend is to be liberally granted. If the underlying facts or circumstances relied upon by a party may conceivably provide a basis for relief, they ought to be afforded the opportunity to test the claim on its merits. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The liberal policy favoring amendment is not without its limits, however. Leave to amend may be denied for any of several reasons.

■ Undue prejudice is the foremost reason why leave to amend should not be granted. It is "the touchstone for the denial of leave to amend". *Cornell and Co., Inc. v. OSHRC*, 573 F.2d 820, 823 (3rd Cir.1978). A party opposing leave to amend for this reason has a heavier burden than merely claiming prejudice. It must demonstrate that it would be *unfairly* disadvantaged or deprived of the opportunity to present evidence which it would have offered had the amendment been made in a timely manner. *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 n. 19 (3rd Cir.1969).

■ Leave to amend also may be denied upon a showing of bad faith, dilatory motive, undue or unexplained delay, or repeated failure to cure deficiency in amendments previously allowed or futility of amendment. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

■ The trustee never *formally* requested leave to amend the complaint as outlined above. Rather, he merely informed the court and defendants at the beginning of trial what he "really" was claiming in Counts IV and VI. While we do not wish to encourage this practice, it is clear that leave to amend may be granted even though trial has begun and no formal motion to do so was ever made. *Heyl & Patterson*, 663 F.2d at 425–26.

■ As has been indicated, defendant objected to the above amendments only on grounds of prejudice. Their claim of prejudice is not persuasive. Although they *claimed* that they would be prejudiced, defendants did not *demonstrate* in any manner, let alone in a clear and persuasive fashion, what prejudice they would suffer.

All of the defendants were present in the courtroom. Moreover, they did not indicate to the court that additional time would be needed to conduct further discovery. When they were asked by the court whether additional time would be needed to prepare a defense to the amended claims, defendants merely indicated that they wished to take the matter under advisement. At no time subsequent thereto did defendants ask for a continuance; rather, they elected to proceed with the trial and to defend on the merits against the amended claims.

The trustee's motion to amend Counts IV and VI of the complaint therefore will be granted.

## II.

### Count I

The trustee seeks in Count I to avoid certain transfers totaling $12,168.01 to Billie Gailey, the wife of Richard Gailey, on the ground that they were preferential pursuant to 11 U.S.C. § 547(b). All of the transfers which he seeks to avoid took place between February and June of 1984.

At the time the transfers took place, 11 U.S.C. § 547(b) provided as follows:

... the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ On July 10, 1984, approximately one month *after* the last of the transfers at issue had taken place, Congress amended § 547(b) by deleting subsection (4)(B)(ii). A party seeking to avoid a transfer to an insider as being preferential no longer was required to prove that the insider transferee had reasonable cause to believe, at the time of a challenged transfer, that the debtor was insolvent.

This amendment became effective with respect to all cases filed ninety (90) days after July 10, 1984. This adversary action was commenced on October 9, 1987. Thus, the amended version of § 547(b), minus subsection (4)(B)(ii), was in effect at the time this adversary action was brought by the trustee.

Billie Gailey, against whom Count I has been brought, maintains that the pre-amendment version of § 547(b)—i.e., the version containing (4)(B)(ii)—applies to Count I.

The primary issue presented in Count I is whether the amended version of § 547(b) applies retroactively to the transfers at issue in Count I.

If it does apply retroactively, then, since the trustee has established all of the elements necessary for recovery under the amended version of § 547(b), he is entitled to recover from Billie Gailey the value of those transfers. The only defense presented to Count I by Billie Gailey was that she had no reason to believe that debtor was insolvent at the time of the transfers.

■■■■■ Retroactive application of a statute is not favored. *Appalachian Power Co. v. Train*, 620 F.2d 1040, 1047 (4th Cir.1980). Statutes which are to be applied retroactively traditionally have been subjected to stricter scrutiny than have prospective ones. *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250, 1259 (3rd Cir.1978). The presumption against retroactive application is designed to protect reasonable reliance on prior settled law while permitting the new law full prospective effect. *N.L.R.B. v. St. Luke's Hospital Center*, 551 F.2d 476, 484 (2nd Cir.1976).

In general, a statute may be applied only prospectively. As is the case with virtually every legal principle, however, there are exceptions to this generalization. For instance, a statute may be applied retroactively when Congress has clearly indicted that it is to be so applied. *U.S. v. Rewald*, 835 F.2d 215, 216 (9th Cir.1987). In addition, it may be applied retroactively when the change in the statute is merely remedial in nature or relates only to modes of procedure which neither create nor impair any substantive rights. *French v. Grove Mfg. Co.*, 656 F.2d 295, 298 (8th Cir.1981).

■■■■■ The terms "substantive" and "procedural" are not susceptible of uniform definition which applies invariably in every instance. Each term implicates dif-ferent variables depending upon the specific problem to which it is applied. *Samuelson v. Susen*, 576 F.2d 546, 552 (3rd Cir. 1978). A statute is "substantive" in this context if it defines and regulates rights. It is "procedural" if it neither impairs nor enlarges such rights but merely prescribes a method for enforcing them or for obtaining redress for a grievance. *U.S. v. Kairys*, 782 F.2d 1374, 1381 (7th Cir.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986).

■■■■ The circumstances presented compel the conclusion that the amended version of § 547(b), minus subsection (4)(B)(ii) of the previous version, applies to Count I of this case. The amendment is not substantive but rather is merely procedural or remedial. It neither creates a substantive right in favor of the trustee which he did not previously have nor impairs any right which defendant had under the previous version.

Section 547(b), *under either version,* entitles the trustee to avoid certain transfers to a creditor which are "preferential". The amendment in question is merely procedural. It affects only the method by which the trustee must prove entitlement to relief by eliminating the reason-to-believe requirement contained in the previous version. It therefore follows that the amended version of § 547(b) applies to this case even though it affects the legal status of transactions which antedate the effective date of the amendment by some four (4) months or more.

■■■■■ In an effort to be complete the Court feels compelled to advise that the trustee is entitled to relief on Count I even if the amended version of § 547(b) does not apply to this case.

As has been noted, Billie Gailey's defense to Count I was predicated almost entirely on the contention that she had no reason to believe that Gailey, Inc. was insolvent at the time of the transfers at issue.

The facts presented in this case compel a contrary conclusion. "Insolvency", as it applies to Gailey, Inc., means that the fi-

nancial condition of Gailey, Inc. was such that the sum of its debts, exclusive of property exempted or fraudulently transferred, was greater than the value of all its property, at a fair valuation. *See* 11 U.S.C. § 101(31)(A).

Billie Gailey was the wife of Richard Gailey, the sole shareholder, President, and director of Gailey, Inc. at the time of the challenged transfers to her by Gailey, Inc. In addition, Billie Gailey is a school teacher and impressed the court with her intelligence when she testified.

The circumstances surrounding the transfers provided Billie Gailey with ample cause to reasonably believe that Gailey, Inc. was insolvent at the time of the transfers to her. Her husband repeatedly came to her asking to borrow money to meet payroll and other expenses of Gailey, Inc. The transfers to her by Gailey Inc. were in repayment of money Billie Gailey had loaned to Gailey, Inc. for these purposes. Even if Billie Gailey did not in fact infer from all of this that Gailey, Inc. was insolvent, she had ample basis to so infer and ought to have done so. Neither actual knowledge nor actual belief is required. *See In re Gruber Bottling Works, Inc.*, 16 B.R. 348, 352 (Bankr.E.D.Pa.1982). The relevant test is whether the facts respecting Gailey, Inc.'s financial condition that were available to Billie Gailey were such than an ordinary prudent person would be put on notice as to Gailey, Inc.'s financial condition. *See Matter of Montanino*, 15 B.R. 307, 311 (Bankr.D.N.J.1981).

It therefore follows since all of the elements of either version of § 547(b) have been established by the trustee that the trustee is entitled pursuant to 11 U.S.C. § 550 to recover $12,168.81, which is the total value of the transfers at issue in Count I.

### III.

#### Counts II and III

Gailey, Inc. was incorporated in 1980. The purpose of Gailey, Inc. was the removal of asbestos and mechanical insulation on contract jobs that required union labor.

Richard Gailey was the controlling shareholder, President, and director of Gailey, Inc. from its inception.

Universal Labs, Inc. was incorporated by Richard Gailey in March of 1984. The purpose of Universal Labs was to analyze asbestos samples and air samples and to perform general laboratory work. Richard Gailey was the sole shareholder of Universal Labs, Inc.

As President and director of Gailey, Inc., Richard Gailey directed Gailey, Inc. to pay certain debts of Universal Labs. Subsequent thereto, $14,500.00 was provided by Gailey, Inc. to Universal Labs to pay for the latter's start-up expenses and costs.

Gailey, Inc. filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code on January 28, 1985. The case was converted to a chapter 7 proceeding on September 30, 1985. Joseph J. Bernstein was appointed chapter 7 trustee on October 10, 1985. The present adversary action was commenced on October 9, 1987.

Counts II and III state alternative claims against Richard Gailey. Count II alleges that Richard Gailey usurped a corporate business opportunity belonging to Gailey, Inc. when he incorporated Universal Labs. Count III alleges that the transfer that Richard Gailey directed Gailey, Inc. to make to Universal Labs was fraudulent under the Bankruptcy Code (11 U.S.C. § 548(a)).

■ Richard Gailey, by virtue of his position as President and director of Gailey, Inc., stood in a fiduciary relationship to Gailey, Inc. As a consequence, he was required to discharge the duties of his position in good faith. *See* 15 P.S. § 1408 (Purdon's 1967).

■ In general, officers and directors of a corporation are required to devote themselves to the affairs of the corporation with a view to promoting its interests rather than their own. They may not utilize their position in the corporation to obtain any personal profit or advantage beyond that enjoyed by its shareholders. *Bird Coal and Iron Co. v. Humes*, 157 Pa. 278,

27 A. 750, 752 (1893); *Porter v. Healy,* 244 Pa. 427, 91 A. 428, 431 (1914).

An officer or director is required to provide the corporation his undivided loyalty. If a business opportunity which lies within the scope of the corporation's business activities and which is of potential advantage to it is presented, an officer or director is not permitted to avail himself of that opportunity and to seize it for himself. *Bailey v. Jacobs,* 325 Pa. 187, 189 A. 320, 324 (1937).

This principle applies to close corporations. *Seaboard Industries, Inc. v. Monaco,* 442 Pa. 256, 276 A.2d 305, 309 (1971).

There is no "bright line test" for determining when a particular business opportunity is a corporate opportunity. It is a question of fact to be determined from the totality of the circumstances present at the time when it arose. *Borden v. Sinskey,* 530 F.2d 478, 490 (3rd Cir.1976).

As is the case with virtually every legal principle, there are exceptions to this one. An officer may take personal advantage of a corporate business opportunity if the shareholders consent after full disclosure and it is not detrimental to creditors of the corporation. *Hill v. Hill,* 279 Pa.Super. 154, 420 A.2d 1078, 1081 (1980). Also, an officer or director may seize a corporate business opportunity if the corporation is incapable of taking advantage of the opportunity for itself. *Robinson v. Brier,* 412 Pa. 255, 194 A.2d 204, 207 (1963).

The totality of the circumstances presented in this case compel the conclusion that Richard Gailey utilized debtor's assets to pay his personal debts. In addition, he usurped a business opportunity belonging to Gailey, Inc. when he incorporated Universal Labs and placed ownership thereof in his name as opposed to that of debtor.

As has been indicated, the corporate purposes of Gailey, Inc. and Universal Labs, although generally interrelated, were somewhat different. Gailey, Inc. was in the business of removing asbestos and mechanical insulation on jobs that required union labor. Universal Labs was in the business of analyzing asbestos and air samples and of providing general laboratory work.

This admitted difference does not, however, compel the conclusion that Richard Gailey did not usurp a business opportunity belonging to Gailey, Inc. when he incorporated Universal Labs. There was nothing to indicate that Gailey, Inc. was incapable of expanding the scope of its activities so as to include analyzing asbestos and air samples. This could have been done as easily as forming a separate corporation to perform such functions.

Moreover, Richard Gailey's decision to incorporate Universal Labs to perform these functions instead of enlarging the scope of Gailey, Inc.'s activities was never formally approved by the shareholders of Gailey, Inc. His dominion over the affairs of Gailey, Inc. was so absolute that Richard Gailey readily accepted the benefits of the corporate fiction while refusing to comply with its requirements.

Additionally, his decision to incorporate Universal Labs was detrimental to Gailey, Inc. and its creditors. It was detrimental to Gailey, Inc. in that it expended its own funds on behalf of Universal Labs without receiving any obvious benefit in return. The decision was detrimental to Gailey, Inc.'s creditors for much the same reason.

If an officer or director has usurped a corporate business opportunity, the aggrieved corporation may recover all damages suffered by it as a result thereof. *CST, Inc. v. Mark,* 360 Pa.Super. 303, 520 A.2d 469, 472 (1987). Debtor sustained proven damages in the amount of $14,500.00 when it paid Universal's start-up costs and expenses. The trustee therefore is entitled to recover this amount from Richard Gailey pursuant to Count II.[1]

1. It will not be necessary to consider Count III in light of the fact that it was intended as an alternative to Count II, upon which the trustee has prevailed.

## IV.

### *Count IV*

In addition to spending $14,500.00 in helping Universal Labs get started (see Count III), Gailey, Inc. also spent a total of $15,039.48 of its own funds between April 5, 1984 and January 10, 1985 on behalf of Universal Labs. Of that amount, $3,314.07 was for payroll, $350.00 for incorporation expenses, $200.00 in telephone charges, and $987.41 for expenses incurred by Universal Labs in conducting seminars. The precise nature of the remaining $10,188.00 in expenditures by Gailey, Inc. on behalf of Universal Labs cannot be determined.

11 U.S.C. § 548(a) provides in pertinent part as follows:

The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such a transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ..., indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

(B)(i) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer ...;

The trustee alleges in Count IV that the above transfers are avoidable as fraudulent pursuant to § 548(a)(2)(A)–(B)(i). According to the trustee, the transfers are fraudulent because Gailey, Inc. received less than reasonably equivalent value in exchange for them.

■■■ The manifest purpose of § 548(a)(2)(A)–(B)(i) is to establish a test for constructive, as opposed to actual, fraud. It is a test of law, as distinguished from fraud in fact. If the conditions necessary for this provision are met, a *conclusive* presumption of fraud arises. *See* 4 *Collier on Bankruptcy* ¶ 548.03 at 548–50 (15th ed. 1989).

The trustee has the burden of proving each of the following:

(1) a transfer occurred;

(2) the transfer was of an interest of the debtor in property;

(3) the transfer occurred within one (1) year of the filing of the bankruptcy petition;

(4) debtor received less than reasonably equivalent value in exchange for the transfer; and

(5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof.

*In re DeVito*, 111 B.R. 529, 531 (Bankr.W. D.Pa.1990).

■■■ There is no dispute concerning elements (1), (2), (3), and (5). The above payments constituted transfers of an interest of Gailey, Inc. in property, which transfers took place within one (1) year of the filing of the bankruptcy petition on January 28, 1985 and at a time when Gailey, Inc. was insolvent.

The sole dispute relates to (4). Universal Labs contends that Gailey, Inc. did receive reasonably equivalent value in exchange for the above transfers. Specifically, Universal Labs maintains that Gailey, Inc. was awarded a contract worth some $83,000.00 for asbestos removal as a result of efforts by Universal. This, Universal argues, was *more than* "reasonably equivalent value in exchange for" the above payments by Gailey, Inc. on behalf of Universal Labs.

Gailey, Inc. was awarded a contract worth $83,000.00 for asbestos removal at the Albert Einstein Medical Center in Philadelphia, Pennsylvania. That the contract was awarded to Gailey, Inc. due to the efforts of Universal Labs, rather than its own efforts, is highly doubtful. More importantly, even assuming that Universal Labs did play some role in debtor's being awarded the contract, the contract was not received *in exchange for* the above payments. No *quid pro quo* was involved in this matter. In fact, Debtor provided services to the medical center and in exchange thereof Debtor was paid a fee.

The trustee will be awarded $15,039.48, the value of the above transfers, on his claim against Universal Labs in Count IV.

## V.

### Count V

As previously stated, this case was converted to a chapter 7 proceeding on September 30, 1985. The chapter 7 trustee was appointed on October 10, 1985.

Gailey, Inc. made payments to various payees totaling $30,897.03 after conversion and without the knowledge or approval of either the trustee or this court.

The trustee has brought a claim in Count V against Richard Gailey for unauthorized post-conversion disbursement of funds belonging to debtor. According to the trustee, Richard Gailey is liable to the trustee pursuant to 11 U.S.C. § 542(a) for the amount of the unauthorized disbursements.

11 U.S.C. § 542(a) provides in relevant part as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

 Neither Richard Gailey nor Gailey, Inc. was in possession of the funds at issue here when this adversary action was brought. The funds had already been disbursed. Consequently, no action for turnover of the funds could have been brought against Richard Gailey. *Yaquinto v. Greer*, 81 B.R. 870, 878 (N.D.Tex.1988); *In re DeBerry*, 59 B.R. 891, 895 (Bankr.E.D.N.Y.1986). Actual or constructive possession by a defendant is required as a predicate to a turnover action. *DeBerry*, 59 B.R. at 895.

The trustee, however, is not seeking a turnover of property from Richard Gailey but instead is seeking to recover the value of these disbursements as damages. Count V in effect is an action against Richard Gailey for tortious misappropriation of estate property.

 The trustee is entitled to recover the value of estate property from any person or entity who has wrongfully transferred such property after the filing of a bankruptcy petition, absent a showing by the transferor that the transfer was made in good faith and without notice or actual knowledge of the bankruptcy case. *In re Robertson*, 105 B.R. 440, 456–58 (Bankr.N.D.Ill.1989).

 Richard Gailey was the sole shareholder, President, and director of Gailey, Inc. from its inception. In his own words, he was "the chief business gatherer, chief estimator, and chief operating officer" of Gailey, Inc. In short, Richard Gailey had absolute control over the affairs of Gailey, Inc. Any disbursements by Gailey, Inc. were made only at the behest of Richard Gailey and, practically speaking, were made by him. Any distinction between Richard Gailey and Gailey, Inc. in this regard would be chimerical. Furthermore, Richard Gailey unquestionably knew of debtor's bankruptcy filing prior to the disbursements at issue here. It was he who signed the schedules affixed to debtor's bankruptcy petition.

It follows from the foregoing that the trustee is entitled in Count V to recover from Richard Gailey $30,987.03, which is the value of the unauthorized post-conversion disbursements for which he was responsible.

## VI.

### Count VI

The trustee alleges in Count VI that defendants Billie Gailey and Richard Gailey illegally diverted, for their own personal use, several thousands of dollars of debtor's funds. According to the trustee, the transfers were fraudulent pursuant to § 548(a)(2)(A)–(B)(i) of the Code.

The trustee seeks to recover two (2) distinct sets of transfers on behalf of Billie Gailey. Initially, he seeks to recover payments made to the Pittsburgh Teachers

Credit Union for an automobile loan in the name of Billie Gailey (Ex. 14). In addition, the trustee seeks to recover the value of checks made payable to "cash" and endorsed by Billie Gailey (Ex. 15).

The trustee also seeks to recover two distinct sets of transfers to Richard Gailey. He seeks to recover the value of checks made payable to "cash" and endorsed by Richard Gailey (Ex. 16), as well as the value of checks made payable to Richard Gailey and endorsed by him (Ex.17).

Analysis of the trustee's claim in Count VI will be facilitated if each of these categories is considered separately.

### A) *Payments to Pittsburgh Teachers Credit Union (Ex. 14)*

 The trustee seeks to recover a total of $1,540.00 in such payments.

As had been indicated, the trustee has the burden of proving each of the following elements:

(1) a transfer occurred;

(2) the transfer was of an interest of the debtor in property;

(3) the transfer occurred within one (1) year before the filing of the bankruptcy petition;

(4) debtor received less than a reasonably equivalent value in exchange for the transfer; and

(5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof.

*In re DeVito*, 111 B.R. at 531.

With regard to these payments, elements (1), (2), (4), and (5) are satisfied for each payment. Each payment constituted a transfer of an interest of Gailey, Inc. in property within one (1) year of the filing of the bankruptcy petition and at a time when Gailey, Inc. was insolvent.

Element (3) is not satisfied, however, with respect to the following payments:

| Date of Check | Check Number | Amount of Check |
|---|---|---|
| April 8, 1985 | Mellon # 510 | $154.00 |
| June 18, 1985 | Mellon # 540 | 308.00 |
| | | $462.00 |

These two transfers were not made within one (1) year prior to the filing of the bankruptcy petition on January 28, 1985, but instead were made after it was filed. Consequently, they are not avoidable pursuant to § 548(a).

The remaining payments to Pittsburgh Teachers Credit Union totalling $1,078.00 were made within one (1) year prior to January 28, 1985 and therefore may be avoided by the trustee pursuant to § 548(a).

### B) *Checks Payable To "Cash" and Endorsed by Billie Gailey (Ex. 15)*

Billie Gailey endorsed a total of $2,197.43 in checks made payable to "cash". All of the elements required for a fraudulent transfer are met with respect to each of these checks. Consequently, the trustee is entitled to avoid and recover the full amount of these checks.

Altogether, the trustee is entitled to recover from Billie Gailey in Count VI a total of $3,275.45 ($1,078.00 + $2,197.43 = $3,275.43).

### C) *Checks Made Payable to "Cash" and Endorsed by Richard Gailey (Ex. 16)*

Richard Gailey endorsed a total of $16,776.63 in checks which were made payable to "cash".

 Of the checks in question, the following checks totalling $3,000.00 were issued *post-petition* and therefore do not satisfy element (3):

| Date of Check | Check Number | Amount of Check |
|---|---|---|
| 07/19/85 | PNB # 1006 | $1,000.00 |
| 07/19/85 | PNB # 1007 | 500.00 |
| 03/13/85 | Mellon # 1030 | 100.00 |
| 04/15/85 | Mellon # 515 | 200.00 |
| 04/09/85 | Mellon # 511 | 250.00 |
| 03/08/85 | Mellon # 499 | 150.00 |
| 03/04/85 | Mellon # 490 | 100.00 |
| 02/04/85 | Mellon # 476 | 200.00 |
| 06/26/85 | Mellon # 1054 | 250.00 |
| 02/26/85 | Mellon # 494 | 250.00 |
| | | $3,000.00 |

 Certain other payments were for legitimate business and travel expenses incurred by Richard Gailey, who traveled ex-

tensively on behalf of Gailey, Inc., and therefore do not satisfy element (4). Gailey, Inc. received "reasonably equivalent value" in exchange for the following payments:

| Date of Check | Check Number | Amount of Check |
|---|---|---|
| 09/28/84 | Mellon # 239 | $ 500.00 |
| 09/20/84 | Mellon # 210 | 600.00 |
| 09/17/84 | Mellon # 156 | 200.00 |
| 06/26/84 | UNB # 1442 | 300.00 |
| 06/25/84 | UNB # 1439 | 100.00 |
| 06/08/84 | UNB # 1408 | 250.00 |
| 03/02/84 | UNB # 1226 | 1,086.90 |
| 02/27/84 | UNB # 1216 | 328.24 |
| 01/14/85 | Mellon # 472 | 100.00 |
| 01/07/85 | Mellon # 456 | 100.00 |
| 12/28/84 | Mellon # 436 | 300.00 |
| 11/01/84 | Mellon # 354 | 100.00 |
| 10/23/84 | Mellon # 344 | 250.00 |
| 10/09/84 | Mellon # 294 | 250.00 |
| 12/17/84 | Mellon # 393 | 250.00 |
| 06/15/84 | UNB # 1425 | 300.00 |
| | | $4,665.14 |

The remaining checks totalling $6,914.06 satisfy all of the elements required for a fraudulent transfer. The trustee therefore may avoid and recover from Richard Gailey that amount for checks made payable to "cash" and endorsed by him.

D) *Checks Payable to Richard Gailey and Endorsed by Him (Ex. 17)*

Richard Gailey endorsed and cashed a total of $2,501.16 in checks made payable to him.

The following check was for legitimate travel expenses incurred by Richard Gailey on behalf of Gailey, Inc. and therefore does not satisfy element (4):

| Date of Check | Check Number | Amount of Check |
|---|---|---|
| 01/08/85 | Mellon # 461 | $250.00 |

In addition, the following checks totalling $1,000.00 were issued *post*petition and therefore do not satisfy element (3):

| Date of Check | Check Number | Amount of Check |
|---|---|---|
| 05/15/85 | Mellon # 522 | $ 150.00 |
| 02/08/85 | Mellon # 478 | 500.00 |
| 05/20/85 | Mellon # 528 | 250.00 |
| 07/30/85 | Mellon # 1060 | 100.00 |
| | | $1,000.00 |

The remaining checks totaling $1,251.16 satisfy all of the elements required for a fraudulent transfer. The trustee therefore

may avoid and recover from Richard Gailey for the remaining checks made payable to and endorsed by him.

Altogether, the trustee is entitled to recover from Richard Gailey in Count VI a total of $8,165.22 ($6,914.06 + $1,251.16 = $8,165.22).

## VII.

### *Summary*

The trustee's motion to amend Counts IV and VI of the complaint will be granted.

In addition, the trustee is entitled to recover the following from the various defendants:

Billie Gailey:

| | |
|---|---|
| Count I: | $12,168.81 |
| Count VI: | 3,275.45 |
| | $15,444.26 |

Richard Gailey:

| | |
|---|---|
| Count II: | $14,500.00 |
| Count V: | 30,897.03 |
| Count VI: | 8,165.22 |
| | $53,562.25 |

Universal Labs, Inc.

| | |
|---|---|
| | $15,039.48 |

An appropriate Order will be issued.